ELENORA PARSONS *vs.* INHABITANTS OF MONMOUTH.

Androscoggin.   Opinion October 10, 1879.

*Towns—authority of.   Town officers—authority of.*

No officer of a town has authority to issue a promissory note in behalf of his town without express permission of the town in its corporate capacity.

Neither can towns borrow money and issue notes of a commercial character for the execution of their ordinary business, unless expressly or impliedly authorized by the statute.

*Semble* a town may be held for money had and received and in fact appropriated for its legitimate business.

ON REPORT.

Assumpsit on a promissory note of the following tenor: "Monmouth, June 4, 1875. For value received as treasurer of the town of Monmouth, I promise to pay Miss Elenora Parsons, or order, nine hundred and fifty dollars, in one year from date with interest. (Signed) William G. Brown, Treasurer."

On the back of the note were two indorsements of $57, each, being the interest for two years.

The writ also contained a count for money had and received with a specification of the note.

The plaintiff testified in substance that on June 4, 1875, she

called upon Oliver S. Edwards, chairman of the board of select-men of Monmouth for the purpose of loaning the town some money; that she went with Mr. Edwards to the town treasurer (Brown) and loaned him $950 and received the note in suit there-for; that she subsequently received the interest as indorsed.

*Oliver S. Edwards,* chairman of the selectmen, confirmed the testimony of the plaintiff, and testified that the town was in want of money at the time; that Brown received the money in the office used as the town treasurer's office, and put it into the safe used by the town.

*William G. Brown,* testified in substance to the same and that —"as near as I can recollect I paid out the money for the benefit of the town;" that he could not tell to whom it was paid; that he and one Walker were in partnership in the manufacture of cloth-ing for Boston parties; that he borrowed money of the town occasionally when he had it in the treasury; that he practiced that mode for several years; that he found a deficiency in his account as town treasurer in 1877 of $12,000; that he could not tell what became of that money, it was a mystery; that he could not swear that he did not borrow from the town treasury in June 1875, some of the identical money received of the plaintiff; that in his settlements with the selectmen he put in his note to cover the deficiency as treasurer; that he had been treasurer from 1864 to 1874, and that when he gave up the books there were thirty-four notes outstanding, unpaid, amounting to $16,000.

There was evidence of Brown's declarations that he kept the town's money and the partnership money in one common pocket-book and used the money out of it for all purposes.

The case was withdrawn from the jury and continued on report.

*Pulsifer, Bolster & Hosley,* for the plaintiff.

If a corporation has received money in advance on a contract void on account of want of authority to make it, and afterwards refuses to fulfill the contract, the party advancing the money may without demand, recover it back in an action for money had and received. *Dell* v. *Wareham,* 7 Met. 438. Corporations are bound by implied contracts within the scope of their powers. 2 Kent. Com. 291. *Canaan* v. *Derush,* 47 N. H. 212. *Lebanon*

v. *Heath,* 47 N. H. 353. *Adams* v. *Farnsworth,* 15 Gray, 423. *Shrewsbury* v. *Brown,* 25 Vt. 197. *Gassett* v. *Andover,* 25 Vt. 342. Angell & Ames Corp. § 237. *Argenti* v. *San Francisco,* 16 Cal. 255, 282.

*Pillsbury & Potter,* for the defendants.

VIRGIN, J. Whether the restrictive word "as" in the body of the note declared on makes it, so far as its form is concerned, the note of the town and not the individual note of the treasurer, we need not now inquire ; for if we adopt that as the true construction, the plaintiff cannot recover under the special count on the note, for the fatal reason that no officer of the town has the authority to issue a note in behalf of the town without the express permission of the town in its corporate capacity ; and the report fails to show any such action by the town. This is too well settled to require the citation of authorities.

Neither can towns borrow money and issue notes of a commercial character for the execution of their ordinary business, unless expressly or impliedly authorized by the statute. Towns are creatures of the statute and find their duties and powers there specified. The general financial officers of towns frequently draw orders upon the treasurers for the payment of some legitimate indebtedness of the town, but such instruments are mere vouchers for the treasurer's disbursements. And though frequently made negotiable in form and therefore have the quality of negotiability so far as to authorize the holder other than the payee to bring his action in his own name if occasion requires, still they are in nowise commercial paper free from equitable defenses, in the hands of *bona fide* indorsees. *Willey* v. *Greenbush,* 30 Maine, 452. *Sturtevant* v. *Libbey,* 46 Maine, 457. *Emery* v. *Mariaville,* 56 Maine, 315. *Bessey* v. *Unity,* 65 Maine, 342. Any view counter to this in *Chamberlain* v. *Guilford,* 47 Maine, 135, is not sound. The "mischievous and alarming consequences" that towns may borrow money and issue therefor notes invested with the character of commercial paper are thoroughly exposed by Judge Dillon in an elaborate opinion recently announced in *Gause* v. *Clarksville,* in the U. S. Court for the E. Dist. of

Missouri, and reported in 18 Am. L. Reg'r, 497, and 19 A. L. Journal, 253. See also 1 Dan. Neg. Instr. § 420, 2 Do. §§ 1527 *et seq.* We have no occasion to discuss this subject further, since the plaintiff puts his main reliance upon his count for money had and received.

Nor need we consider the question whether a town may not be held upon the ground that it received the money and in fact appropriated it to and expended it for its legitimate expenses, as it seems to have been held in *Gause* v. *Clarksville, supra* and cases there cited, and in 1 Dillon Mun. Corp. §§ 384, 750 and notes, and the cases cited by the plaintiff. For the facts reported utterly fail to satisfy us that the money received by Brown from the plaintiff ever went for the benefit of the town; but from the testimony of Brown himself we feel confident that it went in part to make up what he calls the $12,000 "mystery," but which the statute denominates "embezzlement." He testifies that he frequently "borrowed money when I had it in the treasury" apparently unconscious of or indifferent to the fact that such a borrowing is styled and punishable as "larceny" by the statute. R. S. c. 120, § 7.

Taking all the testimony together with his we think it "points the probability" that the town never had a dollar of the plaintiff's money. And if we should decide otherwise, our only reason would be that which is sometimes assigned as the ground of some verdicts, to wit—the plaintiff is a woman and the defendant a town.

Neither does the testimony prove ratification. *Dickinson* v. *Conway,* 12 Allen, 487.

*Judgment for the defendants.*

APPLETON, C. J., WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.