The opinion of the court was delivered by
Bermitdioz, C. J.
The question to be determined in this case involves the right of the plaintiff to recover from the City of New Orleans, as holder of certain certificates of indebtedness, issued by the Comptroller and Mayor, in the name of the city, under a certain ordinance, in favor of parties named therein, or bearer, and which on their face purport to be evidences of liability; in other words: whether such vouchers can be assimilated to ordinary promissory notes, State or municipal bonds, and such as can be recovered upon by holders in good faith and for value, etc.
Substantially, the answer is a denial of ownership in plaintiff and of the right to sue and a declaration of the worthlessness of the instruments', and the assertion, under any contingency, of the right of setting up equities destructive of the rights of plaintiff.
From a judgment of dismissal plaintiff appealed.
In April, 1881, and in June, 1888, Ordinances Nos. 6968 A. S., and 347 C. S., were adopted by the City Council of New Orleans, au *165 thorizing the issuance oí certificates of indebtedness to certain creditors of the city, to be signed by the Comptroller and the Mayor.
They are to the effect:
1. That any creditor of the city to whom the appropriation has been made, but in whose favor the Comptroller can not draw a warrant until there be money in the-treasury to the credit of the appropriate account, nor otherwise appropriated, shall be authorized, upon demand, to receive a transferable certificate of ownership entitling him or bearer to receive a cash warrant.
2. That the creditor shall sign a receipt therefor, stipulating that the cash warrant shall be claimed only on the surrender of the certificate, and the acceptance of the warrant shall be an acceptance of the conditions of the ordinance.
3. That the warrant shall issue strictly in the order of the promulgation of the appropriating ordinance.
4. That the certificate shall not novate or affect the nature of the claim, but shall be simply an evidence of transferable ownership. . . .
5. That the certificate shall state upon its face the nature and effect of its issue, with numbers, dates and names, and that upon its reverse the ordinance shall be printed.
Ordinance 347, O. S., contains the form of the certificate mentioned in it and which reads as follows:
“ Office of the Comptroller.
“ Certificate of Ownership of Appropriation.
“ Issued under Ordinance No. H47, C. S., .approved Jwne 26', hSti.f.
“ New Orleans,-, 188 — .
“This is to certify that under Ordinance No. —, adopted---188 — , the sum of §— has been appropriated to-for and on account of-, and the said-, or bearer hereof, shall, upon the surrender of this certificate (and not otherwise) be entitled to receive in the order of the promulgation of said ordinance a cash warrant on the Treasurer on any fund in the treasury to the credit of the appropriate fund, and not otherwise appropriated.
“ It is herein specially agreed to by the holder of this certificate that it bears no interest-, and shall not novate, nor in any manner affect, the nature of the claim against the city under the ordinance referred to, but shall be simply an evidence of transferable ownership thereof: and whenever the ordinance, or that portion of it to *166 which this certificate applies, is paid or canceled by being tendered and received in payment of taxes when authorized by law, then this certificate shall be surrendered to the office of the Comptroller.
“..............., Comptroller.
u..............., Mayor.”
The certificates sued on are in that form and bear on their reverse a copy of the ordinance. Naturally the blanks are filled up.
The right of municipal corporations to borrow money and to issue negotiable securities has frequently been questioned, and although judicial adjudications on the subject may have considered it from different standpoints, recognizing or denying it according to circumstances, it may now be admitted as settled that they can do neither without express legislative sanction or irresistible implication.
After reviewing all the authorities on the subject, Mr. Dillon says that he regards it as the true doctrine, that, as incidental to the discharge of its ordinary corporate functions, no municipal or public corporation has the right to invest any instrument it may issue, whatever its form, with that supreme and dangerous attribute of commercial paper which insulates the holder for value, from equities which attach to its inception, and he adds that this point should be guarded by the courts with the utmost vigilance. Sec. 126, Mun. Oorp.
The consequences of recognizing such a power, in the extravagance it will stimulate, in the frauds it will engender and in the ruinous indebtedness it will^inevitably produce, are alarming to contemplate. Paragraph 2 of Sec. 125.
Further on he says, that although warrants or orders, negotiable in form, may be made by the proper municipal officers, and, in many States, may be transferred by delivery or indorsement, and the holder may sue thereon, yet they are not commercial or negotiable paper in the hands of holders, which exclude inquiry into the legality of their issue, or preclude defence thereto. They are not bills of exchange. See. 487. Such warrants and orders are not intended to have the qualities of negotiable paper; but are instruments authorized for convenient use in conducting the current or ordinary business of the corporation and as a means of anticipating its ordinary revenue. It would overwhelm municipalities with ruin, to hold that they protect an innocent holder for value from defences of which *167 he has no notice, actual or constructive. All holders of such orders even when payable to bearer, stand in the shoes of the payee, and the rights and remedies are essentially different from those of the holders of authorized [negotiable municipal bonds. Such is the sound doctrine and such the authorities, almost without exception. See. 508.
In the case of Mayor vs. Ray, 19 Wall. 477, it was said that vouchers for money due, certificates of indebtedness for services rendered or for property furnished for the uses of the city, orders or drafts, drawn by one city officer upon another, or any other device of the kind, and for liquidating the amount legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration and for anticipating the collection of taxes; but to invest such documents with the character and incidents of commercial paper as to render them in the hands of bona fide holders,absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal corporation into a trading company, and puts it in the power of corrupt officials to involve a political community in inevitable bankruptcy. No such power ought to exist, unless conferred by legislative enactment, either express or clearly implied. Every holder of a city order or certificate knows that, to be valid or,'genuine at all, it must have been issued as a voucher for city indebtedness. It could not lawfully .issue for any other purpose. He must take it, therefore, subject to the risk that it has been lawfully and properly issued. His claim to be a bona fide holder will always be subject to this qualification.
The face of the paper itself is notice to him that its validity depends upon the regularity of its issue.
The officers of the city have no authority to issue for any illegal or improper purpose, and their acts can not create an estoppel against the city itself, its tax payers, or people. Persons receiving it from them know whether it issued and whether they receive it for a purpose and a proper consideration. Of course, they are affected by the absence of these essential ingredients, and all subsequent holders take cum onere, and are affected by the 'same defect.
This ruling is in perfect accord with what the same court had *168 shortly before held. See Police Jury vs. Britton, 15 Wall. 566; see also Parsons vs. Monmouth, 70 Me. 262.
In this State, instruments of such character have been declared not to be commercial or negotiable paper. State ex rel. Board vs. Hernandez, 31 An. 161; State ex rel. Daunoy vs. City, O. B. 52, folio 289; State ex rel. Newman vs. Lusher, O. B. 50, folio 571.
It is therefore patent that whatever the form be, the certificates sued on, they are not negotiable and transmissible, as is claimed by the plaintiff.
A simple inspection of them suffices to justify this conclusion.
They are instruments consisting of face and reverse, which must be read as one, in each instance, from the eight corners.
Although they purport to be certificates of indebtedness in favor of creditors of the city, in whose favor an appropriation has been made by a designated ordinance, they are not unconditional obligations to pay money. They refer to the ordinance under which they were prepared and which, printed on the back, forms part of them; they give the name of the creditor entitled to receive same, whose name must be on the city’s books; they show that they can not be uttered unless the receipt mentioned in the ordinance be first given; they are simply, under the terms of the ordinance, evidence of transferable ownership; they do not call for money on presentation; they fix no time for maturity; they are merely convertible into a cash warrant and subjected to other contingencies, useless to specify. They are not indorsed by the party whose name they contain, or by any agent or transferee of his. They are not even conditional obligations to pay any amount. How then can it be claimed, with any sincerity, that they can be assimilated to ordinary notes and bonds?
Por the purposes of this controversy it is immaterial how they left the hands of the city officials who signed them, whether fraudulently or otherwise, and whether the plaintiff is or not holder in good faith, for value and in due course of business.
Prom the very language of the ordinance, which forms part of them, they could not have been uttered by the city officers authorized to emit them unless the parties to whom they accrued had previously signed therefor, as a condition precedent for delivery, a specific receipt containing certain stipulations, as parts of a new contract.
There is no evidence that such receipt was ever signed by the *169 parties named in the certificates, their agent or transferee; so that, even if the certificates were obligations to p'ay, which they are not, their emission to the creditor could have vested title in him, to them, only on his signature of the receipt, and this formality having been imposed as a prerequisite by the ordinance printed on the back of the certificates and forming part thereof and not having been observed, the ownership of the certificates would not pass to plaintiff.
To all intents and purposes, those certificates are in legal contejnplation still in the possession of the city, subject to the order or receipt of such parties, their agent or transferee; so much so, that, if the city were to satisfy the-demand of'plaintiff the original parties might have cause to complain and require another payment to themselves.
Surely, the plaintiff in this case has no greater rights than the parties whose names the certificates bear. Oonceding that those parties have either signed the receipt in question, or indorsed over the certificate in blank to the plaintiff, it does not follow that the plaintiff would be entitled to the money judgment which he seeks, for the obvious reason that the parties named in the certificates could not themselves have obtained it, inasmuch as, under the ordinance which forms part of the certificate, all that the creditor could claim would be a warrant on the Treasurer, to be paid out of the appropriated fund in the city coffers, in the order stated in the ordinance.
The demand is not for any such warrant, and if it were it could not be allowed, as there is no evidence that there is money in the treasury appropriated to the payment of the debt or claim for which the warrant would have issued.
Judgment affirmed.