## Potters National Bank of East Liverpool, Ohio, v. Ohio Township, Appellant.

*Municipalities — Townships — Road supervisors — Authority to borrow money—Ultra vires—Taxation—Extraordinary emergencies —Burden of proof—Minutes of board—Supplementing minutes by parol evidence—Notice of meeting—Constitution, Art. IX, Sec. 10 —Act of June 23, 1897, P. L. 194.*

1. Aside from the taxing authority conferred upon them by statute, the financial resources of township supervisors are limited and they are without general power to borrow money on the credit of the township. An exception to this limitation, arising from necessity, exists however where, by reason of an extraordinary emergency or condition, such as a destructive flood, roads are rendered impassable and bridges destroyed and the current revenues from taxation are insufficient to defray the unusual expenses necessary for repairs and reconstruction.

2. Where the road supervisors of a township had made a tax levy equivalent to ten mills on each dollar of the valuation of property in the township, being the limit of taxation allowed by the Act of June 23, 1897, P. L. 194, but, owing to the fact that roads and bridges were rendered impassable by an extraordinary flood, the funds so provided were insufficient, the supervisors had authority to borrow money on a promissory note to pay for repairing the roads and placing them in passable condition, and in an action on a note given in renewal of the original note, and which fell due at a time when the revenues from taxation were sufficient to pay it, the contention that the action of the board was ultra vires and that the township was not liable was without merit.

3. Where in such case it appeared that the supervisors had not

at the time of incurring the indebtedness made provision for an annual tax sufficient to pay interest and principal within thirty years, as provided by Art. IX, Sec. 10, of the Constitution, but where it further appeared that, following the emergency, a tax had been levied sufficient to pay the note out of existing revenues, it was not material that no definite amount was specifically apportioned out of the levy to the repayment of the note.

4. The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance.

5. In such case, the court made no error in refusing defendants' point for charge to the effect that the burden was on plaintiff to prove the portion of the emergency work done on the highways and bridges, and that there was not in the hands of the board of supervisors sufficient funds from their tax levies, previous to the time of borrowing the money, to meet the emergency and restore the roads and bridges to a safe condition for travel; all that plaintiff was required to prove was that an emergency existed and that the funds were insufficient to meet it; and he was not obliged to see to or prove the proper application of the proceeds of the loan.

6. Where in such case, the minutes of the supervisors stated that an additional levy of four and one-half mills road tax was levied, omitting the purpose of the levy, parol evidence was admissible to supply the deficiencies of the record of the meeting and explain or supplement them.

7. Notice of meeting to raise funds to apply on contract for purchase. Will give notice of meeting to borrow money for that purpose.

*Practice—Supreme Court, Rule 27—Bracketing charge.*

8. It is not good practice to bracket the parts of the charge assigned for error with pen and ink.

Argued Oct. 2, 1917.   Appeal, No. 40, Oct. T., 1917, by defendant, from judgment of C. P. Beaver Co., June T., 1914, No. 636, on verdict for plaintiff, in case of Potters National Bank of East Liverpool, Ohio, v. Township of Ohio, Beaver County, Pa.   Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Assumpsit on a promissory note.   Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,747 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury and rulings on evidence.

*R. S. Holt,* of *Holt, Holt & Richardson,* with him *R. W. Stiffey,* for appellant, cited: Roundsley v. Tuscarora Twp. School District, 47 Pa. Superior Ct. 623; Good Roads Machinery Co. v. Old Lycoming Twp., 25 Pa. Superior Ct. 156; Rice v. Lake Twp., 40 Pa. Superior Ct. 337; Davis v. Doylestown Boro., 3 Pa. C. C. 573; Witherop v. Titusville School Board, 7 Pa. C. C. 451.

*James L. Hogan,* with him *J. H. Cunningham* and *D. A. Nelson,* for appellee, cited: Lehigh Coal & Nav. Co.'s App., 112 Pa. 360; Hamill v. Supreme Council of the Royal Arcanum, 152 Pa. 537; Rose v. Independent Chevra Kadisho, 215 Pa. 69; Rainsburgh Boro. v. Fyan, 127 Pa. 74.

OPINION BY MR. JUSTICE FRAZER, January 7, 1918:

Plaintiff sues to recover on a note for $1,500 given by the supervisors of Ohio Township, Beaver County, for money loaned to the township for use in defraying expenses incident to the construction of township bridges and the repair of roads. The defense was that the township supervisors were without authority to borrow money for the purpose stated, and, if such power existed, the note was void because of noncompliance with the constitutional provision requiring a tax levy sufficient to pay the debt and interest within thirty years, and for the further reason that proper notice of the meeting of the board of supervisors at which the loan was voted was not given. The trial judge submitted to the jury the various questions of fact raised and upon a verdict for plaintiff and judgment thereon, defendant appealed.

Defendant is a township of the second class and in the year 1912, its board of supervisors, consisting of three members, levied a tax of five and one-half mills for road purposes during the current year, this amount having been found sufficient for ordinary requirements. On September 1st of that year, that part of the county was visited by an extraordinary rainfall, resulting in a flood which destroyed a number of township bridges and rendered roads impassable at various places. At a meeting of the supervisors held the following day, an additional levy of four and one-half mills was made for the purpose of procuring funds to be used in rebuilding the impaired roads and bridges, thus bringing the total levy for the year to ten mills, the limit allowed by the Act of June 23, 1897, P. L. 194. Immediately following the flood the supervisors began the work of repairing the roads and placing them in passable condition for temporary use, in the meantime preparing plans and specifications for permanent reconstruction which contemplated the erection of eight new concrete bridges. After due advertisement the contract for bridge work was entered into November 8, 1912, and by its provisions each structure was to be paid for upon completion and acceptance by the supervisors, all work to be finished on or before November 30, 1912, providing the weather was favorable for concrete work. In the early part of December, three of the bridges were substantially completed and the contractor requested payment on account of his contract. In the meantime the supervisors were receiving taxes from the current and special levies, the amount however so received, after payment of current expenses for work done, being insufficient at that time to meet the demand of the contractor, and, on December 5, 1912, at a special meeting called for that purpose, a motion was adopted authorizing the borrowing of $1,500 from plaintiff. Conformably to the board's action a ninety-day note was duly executed by the supervisors and discounted by plaintiff bank and the proceeds applied by the super-

visors on account of the contractor's claim and other necessary work done on the roads and bridges. On December 19th, the levy of ten mills was continued for the year 1913 and upon maturity of the $1,500 note a renewal was obtained for a further period and upon maturity of the renewal note, payment was refused by a succeeding board of supervisors, although at the end of the year 1913 there were ample funds in the treasury to meet the obligation and this condition of the treasury continued up to the time this action was brought.

Section 6 of the Act of June 13, 1836, P. L. 555, requires that public roads "at all seasons be kept clear of all impediments to easy and convenient passing and traveling at the expense of the respective townships." Section 31 of the same act imposes upon the supervisors the duty of erecting and maintaining sufficient bridges over creeks and gullies where necessary for the ease and safety of travelers. The duty imposed upon township supervisors is a mandatory one and failure to perform renders them subject to indictment. To raise funds they are given power to assess such taxes as may be necessary for that purpose not exceeding ten mills on the assessed valuation for county purposes: Act June 23, 1897, P. L. 194. Aside from the taxing authority conferred upon them the financial resources of township supervisors are limited and they are without general power to borrow money on the credit of the township. An exception to this limitation, arising from necessity, exists however where, by reason of an extraordinary emergency or condition, such as a destructive flood, roads are rendered impassable and bridges destroyed and the current revenues from taxation are insufficient to defray the unusual expenses necessary for repairs and reconstruction. In such case, as their duty requires them to place bridges and roads in a reasonably safe condition for travel without delay, the only course open is to borrow the necessary funds, and power to do so is necessarily implied: Maneval v. Jackson Twp., 141 Pa. 426-435. The nature

of the repairs and the style or type of new bridges to be constructed to replace those destroyed are matters necessarily resting in the discretion of the supervisors and naturally depends upon the extent of traffic and the demands of modern conveyances.

The trial judge submitted the case to the jury on the theory that supervisors lacked general power to borrow money, but might do so in case of emergency and in absence of funds on hand to meet the unlooked for expense. The jury were instructed they must first find from the evidence existence of an emergency by reason of an extraordinary flood; second, insufficient funds in the treasury at the time to meet the expense incident to repairing the damage; and if they found the existence of an emergency and no funds on hand to meet the expense for necessary work of reconstruction, the supervisors under such conditions possessed authority to borrow money. The jury concluded, and their conclusion is fully sustained by the testimony, that an emergency existed and that the treasury was without funds to meet the exigency. This disposes of assignments one to five and seven to twelve inclusive.

The third question of fact submitted to the jury is covered by assignment of error fifteen, which avers the trial judge erred in refusing defendant's request to charge that if they believed the testimony of Dawson, one of the members of the board, to the effect that the notice sent him by the secretary, of the special meeting held December 5th, set forth in substance that the purpose of the meeting was to raise money to pay on the contract for the bridges, such notice was not sufficient to inform him of a project or plan to borrow money to meet that indebtedness. The question of a sufficiency of the notice was submitted to the jury and they were instructed it was incumbent on plaintiff to satisfy them that the meeting was regularly called and held, and the members of the board received reasonable notice of the nature of the business proposed to be transacted, and, in

this connection, the court further charged that if the absent supervisor received a notice informing him in substance that the meeting was for the purpose of raising funds to apply on the contract for bridges, such notice was sufficient. The object of stating the purpose of a meeting is to give information of the subject-matter to be passed upon, that members can deliberate and act intelligently, consequently a notice is ample if the purpose or object of the meeting can fairly be understood from its language: Dillon on Municipal Corporations, 5th ed., sec. 508, p. 830; 38 Cyc. 614.

Under assignments 13 and 14, appellant contends that, as the contract for the construction of the bridges called for the expenditure of approximately $8,500 and the assessed valuation of the taxable property was about $500,-000, the supervisors failed to comply with Article IX, Section 10 of the Constitution, requiring them "at or before" the time of incurring indebtedness to make provision for an annual tax sufficient to pay interest and principal within thirty years. As a matter of fact the contract was never fully executed but, after three bridges were substantially completed and a portion of the materials furnished for others, there arose a general public dispute over the subject of the township roads and bridges resulting in new supervisors subsequently serving notice on the contractor that they did not consider the contract binding on them, and that no payments would be made for work done and materials furnished, whereupon the contractor declined to further proceed with the work. So far as plaintiff's claim on the note is concerned, the money was borrowed for the use of the township road to meet an urgent necessity, consequently a determination of the validity of the contract, between the township and the contractor which was never in fact fully carried out, becomes unnecessary. The regular annual levy was five and one-half mills, a sum in the opinion of the supervisors sufficient to meet the ordinary expenses of keeping the roads and bridges of the township

in proper condition. Immediately following the flood an additional special levy of four and one-half mills was deemed necessary to raise funds to meet the cost of repairing the damage caused by the storm, bringing the total assessment for the year to the full limit allowed by law and adding $2,250 to the existing revenues, and providing funds sufficient to pay the note in suit upon its maturity. While it is true no definite portion of the four and a half mill levy was specifically appropriated to the repayment of plaintiff's note, and it was made a part of the expenditure of so much of the proceeds in general road work as to leave insufficient funds to repay the loan, confidence must be placed in the exercise of the discretion of the supervisors, and if they in good faith make such levy as can reasonably be expected to procure the necessary funds, the mistake in judgment on their part should not, for constitutional reasons, invalidate the debt. The language used in Addyston Pipe & Steel Co. v. Corry, 197 Pa. 41, is pertinent to the question here involved. In speaking of the constitutional restrictions on municipalities in incurring indebtedness, it was said: "It is not, however, always possible to adapt present action to future results with absolute precision, and if means are adopted which in good faith, according to reasonable expectation, will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation, or an accidental and unexpected failure to produce the full result. Thus if a city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of fire or flood or decline in values the result is an insufficient fund, it cannot be held that the contract good at its inception would thereby be made bad. The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance."

The sixth assignment avers the trial judge erred in refusing defendant's ninth point for charge, to the effect that the burden was on plaintiff to prove the portion of emergency work done on the highways and bridges, and that there was not in the hands of the board of supervisors sufficient funds from their tax levies previous to the time of borrowing the money to meet the emergency and restore the roads and bridges to a safe condition for travel. The second part of this request was affirmed in the general charge, the point as written however could not be approved for the reason the first part placed upon plaintiff a burden it was not obliged to assume. In so far as the right of plaintiff to recover is concerned, the separation of the items was unnecessary as there could be no doubt of the total cost of the emergency work exceeding the amount borrowed. Plaintiff was required to prove an emergency and the absence of funds to meet it but was not obliged to see to a proper application of the proceeds of the loan.

The sixteenth to eighteenth assignments inclusive relate to the admission of testimony of the secretary of the board as to the intended application of the tax levies, the complaint being that its admission was in effect permitting the introduction of parol evidence to contradict the written minutes of the meeting offered in evidence without averment of omission therefrom by fraud, accident or mistake. The minutes offered merely state "An additional levy of four and a half mills road tax was levied" omitting the purpose of the levy. Parol evidence was consequently admissible to supply the deficiencies of the record of the meeting and explain or supplement them: Hamill v. Supreme Council of The Royal Arcanum, 152 Pa. 537; Rose v. Independent Chevra Kadisho, 215 Pa. 69.

In the assignments specifying errors in the charge, the requirement of Rule 27 that "the parts of the charge assigned as error shall be enclosed in brackets in the printed charge with the number of the assignment

noted" was attempted to be complied with by inserting the brackets in the printed pages with pen and ink with the result that the number was omitted from one of them in the writer's copy of appellant's paper book. This practice, which is not unusual, is not to be commended.

The assignments of error are all overruled and the judgment affirmed.