# Rettinger, Appellant, *v.* Pittsburgh School Board.

*Municipalities—Indebtedness—Increase of debt—Vote of electors—Ratification—School board — Current revenues — Constitutional law—Burden of proof.*

1. Where the greater portion of the floating debt created by a school board is illegal because it exceeded the two per cent constitutional limit of indebtedness allowed without a vote by the people, such indebtedness may be validated and refunded by a bond issue authorized by a vote of the electors. After the illegal debt has thus been validated, it need not be considered in computing the total debt created by the school board without a vote of the people.

2. Where a debt is incurred by a school board for the construction of a school house, and it is claimed that the amount of it exceeded the two per cent constitutional limit, the burden of proof is on the board to show that such debt could not be paid out of current revenues. If such evidence is produced the courts will not declare the debt illegal.

Argued October 15, 1919. Appeal, No. 72, Oct. T., 1919, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1915, No. 702, on verdict for defendant in case of A. Rettinger, for use of Walker's Mills Stone & Brick Company, and now for use of Allegheny Trust Company v. School Board of the City of Pittsburgh. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Assumpsit on a warrant issued in payment for work and material furnished in the construction of a school house. Before CARPENTER, J.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Charles W. Dahlinger,* with him *Henry Meyer,* for appellant.—The amount of the claim in question with the other indebtedness of the Moorhead Sub-School District did not exceed two per centum of the indebtedness authorized by law without a vote of the electors: Linn v. Chambersburg Boro., 160 Pa. 511; Kolb v. Tamaqua Borough, 218 Pa. 126; Lansdowne v. Citizens Elec. L. & P. Co., 206 Pa. 188; Alexander v. Philadelphia, 17 Pa. D. R. 799; Dunn v. Tarentum Borough, 23 Pa. Superior Ct. 332; Wilson v. Beech Creek Cannel Coal Co., 161 Pa. 499; Hazlett v. Fergus, 165 Pa. 310; Morrison v. Collins, 127 Pa. 28; Devereux's Est., 184 Pa. 429; Ruchizky's Est., 205 Pa. 105; Conmey v. Macfarlane, 97 Pa. 364.

There was sufficient current revenue out of which the amount could have been paid: Mellor v. Pittsburgh, 201 Pa. 397; Alexander v. Phila., 17 D. R. 799; City of Erie's App., 91 Pa. 398; Brooke v. Phila., 162 Pa. 123; Reuting v. City of Titusville, 175 Pa. 512; O'Malley v. Olyphant Borough, 198 Pa. 525; Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41; Wade v. Oakmont Borough, 165 Pa. 479.

The plaintiff contends that there can be no question that by the electors giving their assent to the creation of the debt of $134,311, that debt was validated and made a legal indebtedness of the Moorhead Sub-School District and may be deducted from the gross amount of its indebtedness: Keller v. Scranton, 202 Pa. 586; Bell v. Waynesboro Borough, 195 Pa. 299; Pepper v. Phila., 181 Pa. 566; Roye v. Columbia Boro., 192 Pa. 146.

*J. Rodgers McCreery,* for appellee, cited: Lesser v. Warren Boro., 237 Pa. 501.

OPINION BY MR. JUSTICE FRAZER, January 5, 1920:

In June, 1911, the Moorhead Sub-School District of the City of Pittsburgh contracted with the legal plaintiff for material and labor, necessary in the construction of a school building, for the sum of $4,300. Plaintiff completed the work in September, 1911, and on September 29th, the district school board authorized payment and directed that a warrant be issued for the amount, payable January 3, 1912. The warrant was subsequently issued and transferred to the Allegheny Trust Company, the use-plaintiff, and, on presentation for payment to the Pittsburgh school district, the successor to the Moorhead Sub-School District under the School Code of 1911, payment was refused on the ground that the Moorhead Sub-School District in issuing the warrant had exceeded the two per cent constitutional limit of indebtedness allowed without a vote of the people. The facts were not in dispute and the trial judge directed a verdict in favor of defendant, from which plaintiff appealed.

The bonded indebtedness of the Moorhead Sub-School District in 1911 was $290,000, made up of four bond issues as follows: issue of 1905, $115,000; 1907, $30,000; 1909, $134,000; 1910, $11,000. The issue of 1909 was authorized by a vote of the electors of the district, while the other three issues, amounting to $156,000, were created by the school board. This total indebtedness existed in June, 1911, at the time the contract in question was entered into, subject only to a small deduction to the extent of $1,583.76, consisting of a sinking fund, which will be hereafter considered. The assessed valuation of property within the district in 1911 of $7,548,-480, gave the board a borrowing capacity of $150,969.60. It thus appears the district had borrowed far in excess of its two per cent constitutional limit if the total bonded indebtedness of $290,000 should be included in the calculation.

The first question raised is whether the bond issue of 1909, amounting to $134,000, shall be treated as a debt

created by the board, or one authorized by a vote of the people. At the time the issue was provided for there was in existence the earlier bonded indebtedness of $145,000, and also a floating debt created by the board which the new issue was intended in part to refund, amounting to $145,000. The court below reached the conclusion the vote of the electors authorizing the issue to refund the floating indebtedness incurred without authority, to the extent it was beyond the two per cent limit of indebtedness, did not have the effect of changing the debt from one incurred by the board to one incurred by vote of electors, and, accordingly, the increase allowed must be considered in computing the total debt created by the board. To sustain this conclusion the court relied upon Schuldice v. Pittsburgh, 251 Pa. 28. In that case, in computing the amount of additional indebtedness the councils of the City of Pittsburgh might lawfully incur without a vote of the electors, the question was whether two previous bond issues made with the assent of the electors, but for the purpose of refunding existing floating indebtedness incurred without such assent, were to be computed in the councilmanic or electoral class of debts. The floating indebtedness funded in that case being valid and not representing an illegal increase beyond the powers of councils the question of ratifying, by an electoral vote, an act which, however illegal, would have been proper if previously authorized by the people was not before the court. The indebtedness being originally in the councilmanic class it was held the mere fact that it was subsequently funded by a bond issue created by the electors did not change its original status, and, consequently, the amount continued to represent indebtedness incurred without a vote of the people. In the present case the greater portion of the floating indebtedness created by the school board, and in existence at the time of the submission of the question of increase of indebtedness to the electors, was illegal. The district had, however, a wide margin of borrowing ca-

pacity, providing the electors authorized the loan; consequently, though the act of the board was beyond its authority, the validity of the debt could not be questioned if properly authorized by the people. The question is not merely one of funding a previous debt properly incurred, but of ratifying the earlier illegal act of the board and validating a void obligation. As a debt created by the board it was without legal existence. Accordingly, at the time the matter was placed before the electors the question submitted to them was that of "validating and giving binding force to such indebtedness so created as aforesaid without consent of the electors of said school district." The people possessed the power to ratify that which they might have authorized and when thus ratified the debt became one created by the people because solely in this form it could be validly created. A question of ratification of an unauthorized indebtedness arose in Bell v. Waynesboro Borough, 195 Pa. 299. The following language from the opinion of the court below in that case, affirmed by this court, is applicable here (pages 301-2) : "It follows that this floating debt, which then existed, being in excess of the two per cent limit, was illegally created and, therefore, invalid. But it was not irremediably so. It was invalid only because it lacked the assent of the electors of the borough. It is not a case of total want of power. To the borough authorities is committed both the right and power to contract indebtedness in amount not exceeding seven per cent of the total assessed valuation of the taxable property therein, the power, however, to be exercised with respect to any excess over the two per cent limit only with the express consent of the electors. This latter provision is intended to regulate the exercise of the power. It is not the consent of the electors that creates the debt. It is the act of the borough authorities, and, after consent given, it still rests with them to say whether it shall be contracted. And it is not a regulation that calls for any compliance on

the part of the electors. It is not imposed on them, but for their protection it is imposed on their agents. The invalidity of any action taken in disregard of such regulation, is full protection to the electors; but it is a protection that they need not avail themselves of unless they are so minded. As they could have authorized the debt in the first instance by giving their agents power to contract it, they unquestionably have the right to affirm and ratify it when contracted without their previous assent, by like action on their part as was required to give the power originally. This doctrine is fully recognized by Dillon in his work on Municipal Corporations, vol. 1, page 640, and that too in connection with this very matter of municipal indebtedness. It results from the elementary rule that a ratification of a prior act or contract may be made by any one in whose behalf the act or contract has been made, provided such person is capable himself of doing the act or entering into the contract."

It is further argued that if the $134,000 bond issue is eliminated the school district had nevertheless contracted indebtedness beyond its constitutional limit. The remaining indebtedness is $156,000, to which must be added $3,800, debt represented by an outstanding note for that amount, making a total of $159,800 existing at the time the $4,300 contract in controversy was let, aggregating in all $164,100 of indebtedness, from which must be deducted the sinking fund of $1,583.76, leaving a balance of $162,516.25; deducting from this the borrowing capacity of the board $150,969.50, there remains $11,546.74, of excess indebtedness to be provided for out of current funds. The rate of school tax for the year 1911 was 6½ mills, which should realize a total school tax of $49,065.12, to this amount should be added the sum of $12,295.67, representing taxes assessed in previous years and collected during 1911, making a total available income of $61,360.79, out of which current running expenses and the additional debt of $11,564.74 must be pro-

vided for. We find nothing in the record from which we can accurately determine to what extent this fund was needed for current expenses, and, hence, are unable to state whether the available income at the time the contract in question was made seemed reasonably adequate to take care of the additional obligation. We can only judge by the result which shows the sum of $44,000 was turned over to the Moorhead Sub-School District Board during the year 1911 and at the end of the year a balance in the account of the district of $2,396.10 appeared. To this may be added the sum of $546.93, representing the balance on deposit belonging to the district at the end of 1911. There also remains uncollected taxes for the year amounting to $16,703.80, making a total of $19,-646.83 of cash and uncollected taxes turned over to the new school board to cover payment of the floating indebtedness of $11,564.74. Whether there were fixed charges against this fund sufficient to show a deficit does not clearly appear from the brief testimony in the record. The burden of showing this situation rested upon defendant: Addyston Pipe & Steel Co. v. City of Corey, 197 Pa. 41. In so far as disclosed by the record the contract when made was within the limit of the current revenues of the school district and so long as the board did not exceed such revenues and such income as may be derived from special taxation, no objection can be made to the creation of the indebtedness: Erie City's App., 91 Pa. 398; Addyston Pipe & Steel Co. v. Corry, supra. The defendant failed to produce evidence showing current revenues were insufficient to meet the indebtedness and, so far as the record shows, the school board did not violate the constitutional provision requiring it to pay as it goes when certain limits have been overstepped.

The judgment is reversed and the record remitted with direction that judgment be entered for plaintiff for the amount of its claims.