Ohlinger et al. *v.* Maidencreek Township
(et al., Appellant).

Argued January 23, 1933, reargued May 25, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles H. Weidner*, with him *Rieser & Rieser* and *Stevens & Lee*, for appellant.

*Oliver Lentz*, for appellees.

OPINION BY MR. JUSTICE KEPHART, June 30, 1933:

Maidencreek Township, a township of the second class, on August 23, 1921, borrowed $6,000 for use in permanently improving a state aid road. It gave its note to the First National Bank of Leesport, which was renewed on November 29, 1921, and from time to time thereafter until July 20, 1930, from which date it remains due.

The property assessment within the township for tax purposes in 1921 was $1,266,378, and the debt is conceded to be within the two per cent constitutional limit.

Later on, in 1928, the township purchased a truck, and gave to the bank its note for $6,000. In that year and the following, 1929, the township paid on account of this note $3,000, leaving a balance due of $3,000. The bank thereafter applied money of the township on deposit in payment of the above balance.

At no time was the two per cent constitutional limit on indebtedness without the approval of the electors exceeded. No tax was levied at or before the time the foregoing transactions took place to provide for payment of the indebtedness.

On August 9, 1930, the Supervisors, by resolution, levied a tax to pay the $6,000 and $3,000 notes, authorizing the issuance of a new note in the sum of $9,000 as a "collateral" note.

The Secretary of Internal Affairs in accordance with the Act of 1927, P. L. 9, and its supplement of 1929, P. L. 516, approved the note. The $9,000 collateral note was then delivered to the bank; a tax was levied to pay the note as will later appear.

A taxpayer's bill was filed to enjoin the township from paying any part of the $9,000 indebtedness. After hearing, the court below ordered the bank to repay the amount retained by it in payment of the 1928 note and declared that debt void. It also held that the note evidencing the indebtedness of 1921 was illegal and void, and constituted no valid obligation of the township. From this decree the bank has appealed.

In Georges Twp. v. Union Trust Co., 293 Pa. 364, it was stated at page 369: "The limitations on all municipalities to the power to create a debt or borrow money are as follows: First, there must be a lawful purpose for which the money is to be used or the debt created, and, second, the amount which can be borrowed is determined by reference to (a) the current revenues due or created within the year, and (b) the constitutional percentage authorized on the assessment value of property. The procedure necessary to give effect to the borrowing power is not an incident of the power, but a regulation for its proper exercise. The purpose for which money is to be used, or a debt is to be created, may be ascertained from the authorizing acts, or duty enjoined, or necessarily implied therefrom. In this case it is alleged that the notes were given for loans incurred for the repair and improve-

ment of public roads. This is a proper purpose for which money can be borrowed, or a debt created, if the notes are valid obligations in other respects as well."

The court below found that the purposes for which these loans were created, the permanent improvement of highways, and the purchase of equipment (the truck) for use in making and repairing the roads, were lawful: Act of July 14, 1917, P. L. 840, chapter VII, article I, section 381, clause VIII; Act of April 10, 1929, P. L. 470, section 1. However, it is not building of road or purchasing a truck that is here in controversy: it is the validity of the debts by which these purposes were accomplished that is in question.

The power of a second-class township to borrow money is found in the township code and other statutes, and is limited and regulated by the Constitution. Appellee contends that the notes are void under section 10, article IX, of the Constitution and the legislation enacted in conformity therewith. It reads as follows: "Any county, township, school district or other municipality incurring any indebtedness, shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." It is appellees' contention that at or before any debt may be incurred (money borrowed by note or bond) an annual tax sufficient to pay the loan or debt within 30 years must be provided for, and that of course can only be done by a tax levy which does not in terms appear, and if the annual tax has not been provided for by the levying of some millage or amount the loan is void; that the municipality cannot later cure it no matter if such curing process be undertaken a day or nine years later. Such construction challenges the validity of many municipal bonds as well as loans and we are of opinion that it is a too drastic interpretation of the constitutional provision as to a procedural matter.

The Constitution does not grant the power to a municipality to incur indebtedness; the power comes from the

legislature; it is limited by section 8, of article IX, and regulated by section 10. The latter is a command to the township to provide, by the method therein specified, funds for the payment of an indebtedness, which the legislature authorized within the limitation of the Constitution. The municipality's power is not therein affected, but rather its mode of exercise. The words "at or before" are mandatory, but there is no provision stating that any indebtedness of the city shall be void if such a tax is not provided at or before the incurring thereof. The section is an explicit and express command to subdivisions of government to perform a duty, a duty which may be enforced by mandamus: Com. ex rel. Hamilton v. The Select and Common Councils of Pittsburgh, 34 Pa. 496; East St. Louis v. Amy, 120 U. S. 600. The right to mandamus after money on a loan has been secured indicates that the duty imposed by the Constitution is a regulation of the exercise of the power and does not qualify the power itself: section 10 is purely regulatory. In Dillon on Municipal Corporations, 5th ed., volume 1, section 211, page 418, the author says: "The general construction put upon these provisions is that they are *qualifications and restrictions upon the power or mode of exercising the power* of municipalities to become indebted; . . . . . . We venture to observe that, so far as these and like decisions (see note for authorities) hold that the constitutional provisions quoted are mandatory, that they impose a duty upon the legislature in authorizing the creation of debt, to provide for the levy each year of a tax sufficient to pay the interest and to extinguish the principal at maturity, and that the duty thus imposed is absolute and may be enforced by mandamus or other appropriate remedy; their soundness is beyond question. But the Constitutions do not in general expressly provide that if the municipality does not at or before the time of creating a debt pass an ordinance levying such a tax, that such debt, if otherwise in all respects authorized and valid and for which the municipal-

ity has received full consideration, *shall be void.* If the debt is void, the failure of the municipal officers to do their duty is visited upon third persons, although these persons can enforce such duty in the courts just as effectually as if the duty enjoined by the Constitution or by statute had been reaffirmed and redeclared in a municipal ordinance or resolution. ...... It is not essential, where an *ordinance* is not expressly required, that the municipality itself should make provision by ordinance for the levy of the tax, as the insertion of the direction in the enabling or other statute that a sufficient tax be levied gives the bondholder the right to enforce the levy by mandamus or other suitable remedy. This sound view will probably have the effect to modify prior decisions in several States which assert, or assume, or proceed upon the view that a resolution or ordinance for the levy of the tax is in all cases a sine qua non to the validity of the debt."

The Act of 1874, P. L. 65, supplemented by the Act of 1915, was enacted to enforce the mandate of the Constitution: Campbell v. Wilkins Twp., 273 Pa. 204. Obviously its provisions were not complied with. Hence, the municipality was without lawful authority to issue its notes and they are, therefore, invalid and uncollectible: Bruce v. Pittsburgh, 166 Pa. 152.

The debt of the township, however, was a lawful one and the money borrowed was applied to a proper purpose: Boro. of Rainsburg v. Fyan, 127 Pa. 74. The purpose of the indebtedness having been legal, the constitutional provision limiting the amount of indebtedness not having been violated, although the township failed to follow the prescribed regulation to make the evidence of indebtedness valid, the one furnishing the money to the municipality is not to lose by this neglect, nor is the township to profit. The party so lending the money is entitled to recover in assumpsit, formerly on a common count for money had and received: Boro. of Rainsburg v. Fyan, supra. In that case the borough borrowed $500

to pay the costs and fees in a lawsuit; it was less than two per cent of the assessed value. Two bonds with interest from date, of $250 each, were issued for this debt. No statement was filed in the office of the clerk of quarter sessions and the municipality did not "at or before" issuing the bonds provide for the collection of the taxes as required under article IX, section 10, and section 2, of the Act of 1874. It was held that the debt was lawful and the provisions of the Constitution mandatory. The opinion states:

"But one requisite is lacking. The Act of 1874, section 2, provides inter alia, that the statement to be filed shall show 'the amount of the annual tax levied and assessed to pay the said indebtedness.' As no annual tax was levied before or at the time of incurring the indebtedness, and no provision was made for the collection of an annual tax sufficient to pay the interest, and also the principal thereof within thirty years, the plaintiff, on inquiry made, and he was thrown upon inquiry, would necessarily learn that this was not done.

"The Constitution, article IX, section 10, provides [see above].

"The plaintiff in the absence of a statement...... must be taken to have known that the......Constitution, and the......Act of April 20, 1874, were not complied with in this regard. It follows, therefore, that the bonds were issued without authority, in contravention of the Constitution and the law, and hence there can be no recovery on the bonds.

"It is, however, not required that the statement, etc., be filed before incurring a lawful debt, but that it be filed before issuing bonds as security therefor. In this case the debt was a lawful debt, and less than two per cent......

"We are clearly of the opinion, therefore, that though the bonds are void, yet the debt which they were intended to secure was and is a lawful debt, recoverable by suit on the contract......"

In Long v. Lemoyne Boro., 222 Pa. 311, the court says (pages 317 and 318) : "Though the bank cannot recover on the judgment note given to it, because the attempt to do so is an attempt to enforce an express contract which no one had been properly authorized to execute on behalf of the borough, there is an implied obligation resting upon the municipality to pay back what was lent to it in good faith." See McQuillin on Municipal Corporations, 2d ed., volume 6, section 2509, page 257. Its legal obligation was to pay an honest debt. It had consistently recognized that obligation by its payment of interest. In an action against it for money had and received it would have been the duty of the court, under the facts as developed in this proceeding, to have directed a recovery. In Long v. Lemoyne Boro., supra, we said at page 318: "Municipal repudiation of honest indebtedness which the municipality intended to contract and could have lawfully contracted, is no more to be tolerated than individual repudiation of honest indebtedness merely because it was not incurred in pursuance of a duly executed express contract, unless the municipal charter or the statutes [or the Constitution] prohibit the municipality from incurring any liability by implication." See Aspinwall-Delafield Co. v. Aspinwall Boro., 229 Pa. 1.

The Board of Supervisors recognized the existence and justness of the indebtedness, and, on August 9, 1930, by resolution acknowledged that the money received had been expended for purposes of the township. The resolution authorized the issuance of a note of $9,000, bearing 6% interest per annum, payable in installments as follows:

"Sept. 6, 1930  Principal  $2,000.00  interest  $91.97
          for which funds are provided for
June 6, 1931  Principal  $2,000.00  interest  $315.00
June 6, 1932       "        3,000.00     "        300.00
June 6, 1933       "        2,000.00     "        120.00"

They further did what should have been done when they received the money, levied a tax for its payment.

Section 5 of this resolution levied and assessed an annual property tax to provide the revenue to meet the installments as they fell due. The Court of Quarter Sessions of Berks County had previously, on March 12, 1930, on the petition of the supervisors, allowed a levy of 13 mills for road taxes with the express stipulation that $3,000 of the anticipated increase in the revenue of $4,200 be paid to satisfy these existing debts.

While the $9,000 note was issued to the bank as a collateral note to secure a valid indebtedness evidenced by invalid notes, we are unable to discover any defect in the procedure that supports the collateral note. A valid indebtedness existed. The township recognized this and in compliance with the Constitution and statutes issued valid evidence of its debt. That it called the note "a collateral note" cannot affect its legal force. If it is a collateral note for a lawfully existing debt, its holder may recover on it. The bank is in the same position it would have been had no note ever been issued prior to this one for $9,000, but a valid indebtedness had been kept alive by the payment of interest. It was issued with all the formalities and in accordance with all the requirements of the law. Upon it recovery may be had. We can see nothing which prevents their acts from having their intended effect: School Dist. v. Lamprecht Bros. Co., 198 Pa. 504. See Bell v. Waynesboro Boro., 195 Pa. 299.

If we were to hold strictly to the line of appellees' contention, then our decision in Rettinger v. Pittsburgh School Board, 266 Pa. 67, and the suggestion contained in Southmont Boro. v. Upper Yoder Twp., 284 Pa. 287, would be wrong, for in each case where the indebtedness had been increased beyond 2% without securing the assent of the electors, they also had the further fatal defect of not providing "at or before" the incurring of the indebtedness the annual tax required by the Constitution. The "at or before" provision was considered in Potters Nat. Bank v. Ohio Twp., 260 Pa. 104 (see also

Schilling v. Ohio Twp., 260 Pa. 114), and the present Chief Justice said that the ordinary tax levy, though not earmarked, would be sufficient to take care of the indebtedness within 30 years, though no formal resolution to that effect appeared in the case. Here there was a 7½ mill tax placed, and if we should follow the suggestion in that case it would have been adequate to pay interest and indebtedness within 30 years, but we do not rest the decision on this consideration.

With regard to the purchase of the truck in 1928, it was a current expense and was authorized by section 420 of the Township Act of 1917. The purchase was approved by the Secretary of Highways, and it was not necessary to submit it to the Secretary of Internal Affairs for approval. After a careful summary of this record, we conclude that the indebtedness incurred in the purchase of the truck is a valid one and within anticipated revenues. The bank was within its rights in charging against the township's funds in its possession the amount of $3,201 as it did.

The decree of the court below is reversed, with costs to be paid by Maiden Creek Township.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

The organic law of this State, article IX, section 10, of the Constitution lays down the following unambiguous limitation on the power of the state's municipal agents to incur indebtedness: "Any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." This imposes on municipalities a "Pay-as-you-go" policy, except when the payment of the indebtedness is provided for within thirty years in the manner just stated. The force and mandatory quality of this provision of the Constitution have been again and again recognized by this court.

In Addystone Pipe and Steel Co. v. City of Corry, 197 Pa. 41, 46 A. 1035, this court said in an opinion by Mr. Justice MITCHELL: "There is no constitutional restriction on municipal expenditure, provided it is paid as it goes. What is prohibited is the incurring of debt. If the city has the money on hand or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction" (except, of course, within the limitations of the Constitution, such as the respective 7% and 2% limitations in article IX, section 8). He quotes with approval the following from Appeal of the City of Erie, 91 Pa. 398: "If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created." See also Wade v. Oakmont Boro., 165 Pa. 479, 488, 30 A. 959.

In Campbell v. Wilkins Twp. et al., 273 Pa. 204, 116 A. 823, this court in an opinion by Mr. Justice SADLER gave emphatic recognition to the mandatory provisions of this section of the Constitution. That was a case where the indebtedness of Wilkins Township was within the 2% limit. Nevertheless bonds were issued and offered for public sale. A taxpayer filed a bill to restrain the issuance of the bonds, averring a failure on the part of the township authorities to assess a tax sufficient to secure the redemption within a period of thirty years. The court below sustained this contention. Mr. Justice SADLER said: "One narrow question is now presented for consideration. A tax was assessed by the township authorities sufficient to pay the principal of the bonds, with interest at 5.6% within the period fixed by law. ......
Upon its face, the tax so provided for is insufficient, by $2,100, to pay the total for which the township made itself liable. It is ample, however, if the agreement to pay state tax is disregarded, and it is now insisted that

such a charge need not be considered in making the assessment." Justice SADLER held that the promise of the township to pay the state tax was a part of the liability, for the liquidation of which a fund must be provided. "To put a check upon the incurring of indebtedness by municipalities, the Constitution not only limited the amounts which could be borrowed, but required provision for repayment within a fixed period, and, with this thought in mind, the special tax was provided for. It is immaterial whether the definite promise of the township to pay be called principal or interest. What must be looked at is the obligation assumed. In the present instance, it has contracted for the payment of the four mills for the benefit of the State; it is a part of the debt which the township is bound to pay, and for which it must make provision. This it has clearly failed to do, and, as a result, its attempted issue of bonds was properly restrained." Justice SADLER refers to article IX, section 10, of the Constitution as a "mandate." He says: "To enforce this mandate, the Act of April 20, 1874, P. L. 65, directed a levy in such cases not exceeding in any one year 8% of the borrowed sum, to provide 'for the payment of interest and the liquidation of the principal.' An amendment of April 13, 1897, P. L. 17, makes like requirement, omitting, however, the clause limiting the sum to be collected annually, and this legislation is now applicable to townships of the first class...... See also Act of April 28, 1915, P. L. 195."

This Act of April 28, 1915, supra, provides in section 2 that: "Any county, city, borough, school district, township of the second class, or other municipality or incorporated district, may incur debt or increase its indebtedness to an amount in the aggregate not exceeding two per centum upon the assessed value of the taxable property therein, as fixed and determined by the last preceding assessed value thereof; and the corporate authorities of such municipality may, by a vote thereof, duly recorded upon its minutes, authorize and direct the

incurring or the increase of such debt to the amount aforesaid; and may issue coupon bonds or other securities therefor, in sums not less than one hundred dollars each, bearing interest at a rate not exceeding six per centum per annum, payable semiannually, and the principal thereof reimbursable at a period not exceeding thirty years from the date at which the same is authorized; and an annual tax, commencing the first year after such debt shall be increased or incurred, sufficient for the payment of the interest thereon, and the principal of such debt within a period not exceeding thirty years from the date of such increase, shall be forthwith assessed." This section further provides that before issuing any such obligation or security, it shall be the duty of the principal officer or officers of the municipality or incorporated district to prepare a statement showing the actual indebtedness of such district, the amount of the last preceding assessed valuation of the taxable property therein, the amount of the debt to be incurred, the form, number and date of maturity of the obligations to be issued therefor. This statement must be sworn to and filed in the office of the clerk of the court of quarter sessions.

In Georges Twp. v. Union Trust Co., 293 Pa. 364, 143 A. 10, this court in an opinion by Mr. Justice KEPHART held (quoting the 14th syllabus): "Where a debt created in any year exceeds current revenues, and cannot be paid therefrom, the debt is void unless steps are taken to pay by bonds under the constitutional provision." Justice KEPHART's exact language is found, in his discussion of the City of Erie case, supra, in his opinion in the Georges Township case, at page 371 of the latter case: "If the contracts do not overreach the current revenues, no objection can be made to them, however great the indebtedness may be. But since it did not appear from the record that the contract in question was within the current revenues, and could not be sustained within the constitutional levy, it was held void."

What Maidencreek Township attempted to do in this case now before us comes squarely within the prohibition of the constitutional mandate quoted. Under a long and consistent line of decisions handed down by this court the debt should be declared void. Dillon on Municipal Corporations, 5th ed., volume I, section 211, page 418, is cited in the majority opinion. Only part of section 211 is quoted, however. As I read this entire section, I interpret it as opposed to the position taken by the majority opinion. In the excerpt from Dillon quoted in the majority opinion six dots indicating an omission appear in the fourth line of the quotation. The clause omitted reads as follows: "That no indebtedness can be incurred without a substantial compliance with their requirements [i. e., the requirements of constitutional provisions], and that contracts made, and bonds and other evidences of indebtedness issued, in violation of their terms are invalid, and, if there be no estoppel, cannot be enforced." Where the six dots appear in the last part of the quotation cited in the majority opinion, indicating an omission, I find, inter alia, the following from Dillon: "Under this provision of the Constitution no municipal corporation can incur debt without legislative authority, express or implied; but the grant of such legislative authority carries with it the constitutional obligation on the part of the municipality to levy and collect a sufficient annual tax to pay the interest as it matures and the principal within the prescribed term of years. ...... The *provision* required by the Constitution *means such fixed and definite provision* for the levying and collecting of the required tax as will become a legal right in favor of the holder of bonds issued thereon, or in favor of any person to whom such debt may be payable. But the provision of the Constitution *is sufficiently complied with* if the *statute* which confers authority upon the municipality to incur the debt directs that an annual tax shall be levied sufficient to pay the interest on and create a sinking fund for the redemption of the bonds." Dillon

makes it very plain that no valid debt can be incurred by a municipality unless either the municipality itself makes provision for the levy of taxes, or that there be a direction in the enabling or other statute that a sufficient tax be levied to take care of the indebtedness.

McQuillin on Municipal Corporations, 2d ed., volume 6, is likewise an authority who sustains the court below and is opposed to the position taken in the majority opinion. McQuillin says in section 2365, after quoting the constitutional provision referred to: "Such a constitutional provision precludes the incurring of further indebtedness for any purpose, including pressing wants, during the current year, after the income and revenues for that year have been exhausted; except that certain indebtedness is sometimes expressly excepted by the Constitution from the operation of such a provision." McQuillin, section 2364: "Constitutional limitations on indebtedness [of municipalities] are construed as prohibitory, self-enforcing, and are to be observed strictly." McQuillin, section 2365: "The purpose of these provisions is to compel municipalities to adopt the safe, sane and conservative plan of pay-as-you-go; and that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability, incurred in any one year, shall be paid out of the income or revenue of any future year."

I can find no instance heretofore where this court has ever ruled that a constitutional restriction on the power of a municipality to incur a debt could be ignored if the purpose to be served by the debt was legal. In the majority opinion appears the following: "The purpose of the indebtedness having been legal, the constitutional provision limiting the amount of indebtedness not having been violated, although the township failed to follow the prescribed regulation to make the evidence of indebtedness valid, the one furnishing the money to the municipality is not to lose by this neglect, nor is the township to profit. The party so lending the money is

entitled to recover in assumpsit, formerly on a common count for money had and received: Boro. of Rainsburg v. Fyan, 127 Pa. 74, 17 A. 678 [Long v. Lemoyne Boro., 222 Pa. 311, 71 A. 211]." I find no case where this court has ever before taken any such position as in the excerpt just quoted. The cases cited do not sustain any such proposition. The case of Boro. of Rainsburg v. Fyan, supra, gives no support to the proposition set forth in the majority opinion. *In that case the indebtedness of the borough was not increased by a single cent.* The court below in that case said: "At least $350 of the amount borrowed was applied in the mere exchange of one creditor for another by paying an existing lawful debt, without thereby increasing the debt, and the other portion of the loan, to wit, $150 of the identical money borrowed from the plaintiff, remaining in the treasury of the borough for the use of the plaintiff. It should not in this case be held to have been such an increase of indebtedness as becomes unlawful, for, taking into consideration this unexpended fund lying in the treasury and held there for the purpose, as seems conceded, to pay back to plaintiff, the indebtedness of the borough was not increased thereby."

In this Rainsburg Boro. case the action was one of assumpsit for interest on bonds. The Act of April 20, 1874, P. L. 65, provides that before issuing any bonds, a statement must be prepared and filed by the principal officer of the municipality in the office of the clerk of the court of quarter sessions, showing the last preceding valuation, the amount of debt to be incurred, the form and date of maturity of the obligations to be issued therefor, the amount of annual tax levied and assessed to pay the indebtedness. The court held, as appears from the excerpt first quoted, that *there was no actual increase in the borough's indebtedness, and therefore the payment of the $500 interest did not involve a breach of article IX, section 10, of the Constitution.* The judgment was affirmed per curiam.

In Long v. Lemoyne Boro., 222 Pa. 311, 71 A. 211 (cited in the majority opinion), this court held that the borough actually had no express contract with the Cumberland Valley Bank because the resolutions directing the loan to be made were not presented to the chief burgess for his approval. The court said that: "Without such approval the president of the town council was without authority to execute any kind of obligation in the name of the borough and appellant's contention that the judgment entered on the note given by him is void for want of authority to confess it, must, therefore, prevail." The court held that the bank could recover, however, on the implied obligation resting on the municipality to pay back the legal indebtedness incurred in good faith. There was not the slightest suggestion that the borough in incurring this debt had violated any provision of the Constitution; the only question was the validity of the paper supporting the judgment. The debt itself was not stamped with illegality. The debt in the case before us is illegal and void, because the Constitution says municipalities cannot incur debts the way Maidencreek Township attempted to incur this one. In the Lemoyne Boro. case the debt was not illegal—only the judgment entered on the note given by the president of the council was void for want of authority in him to confess it.

The case of Aspinwall-Delafield Co. v. Aspinwall Boro., 229 Pa. 1, 77 A. 1098 (cited in the majority opinion), does not refer to any question similar to the one now before us. That case held that: "A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the scope of corporate powers." It did not say that a municipal corporation can incur a valid indebtedness in a manner violative of the mandate of the Constitution.

The action of the Board of Supervisors of Maidencreek Township on August 9, 1930, nine and two years, respectively, after they attempted to incur the debts in ques-

tion contrary to the constitutional provisions, does not help appellant's case in the slightest degree. To sanction the attempted validation by the action of the supervisors in 1930 of the debts they illegally incurred in 1921 and 1928, respectively, would be to countenance an attempted circumvention of the Constitution. When a second-class township is not able to manage its fiscal affairs on a "pay-as-you-go" basis and is therefore obliged to incur an indebtedness, the Constitution in article IX, section 10, tells that municipality in language so clear that no doubtful meaning can be read into it, that it "shall at or before the time of so doing," i. e., "incurring any indebtedness" "provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." Instead of obeying this constitutional behest and providing *at or before* the time of incurring the indebtedness for the collection of an annual tax sufficient to pay the debt in thirty years, the township supervisors waited nine years before providing for the collection of an annual tax with which to discharge the indebtedness. For nine years it saddled "a floating debt" on the municipality and this is one thing the Constitution says cannot be done lawfully. The bank is in effect asking us to write into section 10, of article IX, of the Constitution after the phrase "at or before the time of so doing," the additional phrase "or within nine years thereafter." The answer to that is that this court has no authority to amend the Constitution.

It is true that there have been cases in Pennsylvania where municipal debts illegally contracted have been ratified *by the electors*. These are cases where there is applied the rule that a principal may ratify the acts of its agents. We had such a case in Bell v. Waynesboro Boro., 195 Pa. 299, 45 A. 930 (cited in the majority opinion). In that case this court adopted the opinion of President Judge STEWART of the court below. This is an excerpt from that opinion: "It follows that this float-

ing debt, which then existed, being in excess of the 2% limit, was illegally created and, therefore, invalid. But it was not irremediably so. It was invalid only because it lacked the assent of the electors of the borough." In that case President Judge STEWART, referring to the 2% limit, said: "It is not a regulation that calls for any compliance on the part of the electors. It is not imposed on them, but for their protection it is imposed on their agents."

This court in Southmont Boro. v. Upper Yoder Twp., 284 Pa. 287, 131 A. 281 (cited in the majority opinion), held that when a debt is illegal because of lack of electoral consent, the electors could ratify the debt by consent subsequently given. Rettinger v. Pittsburgh School Board, 266 Pa. 67, 109 A. 782 (cited in the majority opinion), is to the same effect. These decisions exemplify a well established rule of law "that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter, even though without any precedent authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been so done, the ratification relates back and supplies original authority to do the act. In such a case the principal is bound to the same extent as if the act had been done in the first instance by his previous authority": 21 R. C. L., page 919, section 99. Section 8, of article IX, of the Constitution does not require that electoral consent be obtained *at or before* incurring an indebtedness in excess of 2% of the assessed valuation. It therefore does not preclude ratification by the electors. But we are dealing here with a case not of a municipality or district increasing its indebtedness to an amount exceeding 2% of the assessed valuation of its taxable property, which section 8, article IX, of the Constitution says cannot be done "without the consent of the electors thereof at a public election." We are concerned in the present case only with section 10, of article IX, of

the Constitution which forbids "any county, township, school district or other municipality incurring *any indebtedness*" unless it "shall *at or before* the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

In the instant case there is not alleged any electoral ratification of the acts of the supervisors; in fact, there is no provision in the Constitution giving even electors power to ratify such debt increasing acts as are herein challenged. What the court is now confronted with is an attempt on the part of the township supervisors to ratify their own illegal acts—and what I think the supervisors are confronted with is the Constitution (section 10, article IX). "The power of ratification did not lie with the supervisors," FIELD, J., in Marsh v. Fulton Co., 77 U. S. 676, 684.

The case of Schilling, for use of First Nat. Bank v. Ohio Twp., 260 Pa. 113, 103 A. 608 (cited in the majority opinion), is not one where township supervisors deliberately flouted the Constitution. In that case it was found as a fact that the supervisors honestly believed that the revenues they provided by two tax levies were sufficient to pay the debt evidenced by the note in question. In that case this court said in an opinion by the present Chief Justice: "......the court below, in its opinion discharging defendant's rule for a new trial, said: 'The testimony was abundant to show that this debt was within the current revenues.' "

Potters Nat. Bank of East Liverpool, Ohio, v. Ohio Twp., 260 Pa. 104, 103 A. 605, is also cited in the majority opinion. In that case this court said in an opinion by the present Chief Justice: "......the financial resources of township supervisors are limited and they are without general power to borrow money on the credit of the township. An exception to this limitation, arising from necessity, exists however where, by reason of an extraordinary emergency or condition, such as a destruc-

tive flood, roads are rendered impassable and bridges destroyed and the current revenues from taxation are insufficient to defray the unusual expenses necessary for repairs and reconstruction. In such case, as their duty requires them to place bridges and roads in a reasonably safe condition for travel without delay, the only course open is to borrow the necessary funds, and power to do so is necessarily implied: Maneval v. Jackson Twp., 141 Pa. 426, 435 [21 A. 672]." In the case before us there was no "extraordinary emergency or condition" to excuse the supervisors' acts. No reason whatsoever can be invoked to explain the failure of the township supervisors to comply with article IX, section 10, of the Constitution in their attempt "to incur this indebtedness" in a manner utterly at variance with the constitutionally prescribed method of incurring it. The failure to comply with the Constitution makes this debt, in my opinion, void.

Lancaster City School Dist. v. Lamprecht Bros. Co., 198 Pa. 504, 48 A. 434, is also cited in the majority opinion. In that case the lower court held (and the judgment was affirmed per curiam): ".......the failure to file the statement before the issuing of the bonds of 1890, even if fatal to the issuing of bonds as bonds, was not an absolute and necessary precedent to the validity of the loan, as there was a lawful indebtedness existing, which the corporate authorities could afterwards recognize and pay." In the case now before us there was no lawful indebtedness incurred and therefore none existing unless article IX, section 10, of the Constitution does not mean what it says.

In Keller v. Scranton, 200 Pa. 130, 49 A. 781, this court held that the mere fact that an improvement is of importance and value to the public is not any justification for exceeding the powers granted by the Constitution. In that case Mr. Justice MITCHELL in reversing the court below said: "It is not improper to say that we have reached our conclusion in this case with reluctance.

The improvement intended is one of great importance and value to the public in doing away with a dangerous grade crossing, and the terms are very advantageous to the city. But the bar of the constitutional prohibition is clear and we may not permit it to be evaded."

In Jackson v. Conneautville Boro. School Dist., 280 Pa. 601, 125 A. 310, this court in an opinion by Mr. Justice WALLING held, (page 607) : "A municipality must live within its means and can no more increase its indebtedness, beyond its actual or expected annual income, for payment of current expenses, than for any other purpose. It is the increase of indebtedness that is forbidden regardless of the object to be accomplished thereby."

The approval by the Department of Internal Affairs of the execution of the note for $9,000, dated June 6, 1930, as "collateral security" for the notes of $6,000 and $3,000 in no degree cures the invalidity of the indebtedness in question. Section 2 of the Act of March 31, 1927, P. L. 91, making it the duty of the Department of Internal Affairs "to carefully examine all proceedings had by the several municipalities of this Commonwealth for the incurring or increasing of the indebtedness thereof, and to ascertain whether the proposed debt is within the limitations imposed by the Constitution and whether such proceedings are in conformity with existing laws" merely clothes that department with certain supervisory powers over municipalities. The act was not intended to establish the doctrine of the infallibility of the Secretrary of Internal Affairs on questions pertaining to the constitutionality and legality of municipal debts. The following succinct statement made by President Judge SCHAEFFER on this phase of the case in the discussion filed with his decision cannot be improved upon : "There is no warrant or authority in law for the Secretary of Internal Affairs, years after debts are illegally incurred, to validate them and make them legal obligations of the municipalities. The Act of 1927 is a regulation of the manner in which municipalities may incur indebtedness;

it cannot be construed as making valid debts which are illegal because the provisions of the act were not complied with. See Falkinburg v. Venango Twp., 297 Pa. 358 [147 A. 62]."

In appellant's supplemental brief the bank invokes the validating Act of June 23, 1931, P. L. 1181, and contends that this act removes any possible doubt that might possibly arise as to the note's validity. The question raised in this supplemental brief is nowhere referred to in the pleadings or in the statement of questions involved. This court has repeatedly held that only those questions included in the statement of "questions involved" need be considered on appeal. This rule was recently reiterated in Phillips v. American Liability & Surety Co., 309 Pa. 1, 162 A. 435, and Bassett et al. v. Armstrong et al., 309 Pa. 296, 163 A. 525.

The validating Act of 1931 specifically excepts from its application "any indebtedness of any township......which violates any restriction imposed by any provision of the Constitution......" This act requires little discussion for under no interpretation can it nullify the Constitution. The indebtedness challenged is invalid because the conditions which section 10, of article IX, imposed as precedent to incurring it were not complied with. Therefore, no statute can save it. The Constitution is not subject to amendment either by the judiciary or by the legislature.

I would affirm the decree of the court below.