# Kershbaum v. London Guarantee & Accident Co., Appellant.

*Practice, C. P.—Trial by court without jury—Requests for findings—Separate answers—Act April 22, 1874, P. L. 109.*

1. The Act of April 22, 1874, P. L. 109, relating to trial of cases without a jury, does not require the court to specifically answer all requests for findings of fact and conclusions of law submitted by counsel.

2. It is sufficient if the facts found adequately cover all material points involved in the case.

*Insurance—Credit insurance—Submission of final statement of claim—Notice—Waiver.*

3. Where a policy of credit insurance provides that a final statement of claim of losses shall be filed with the company within thirty days after the expiration of the loss, the company cannot claim exemption from liability because no such statement was submitted, where it appears, on a trial by the court without a jury, that such statement was presented, shown to witnesses and to the court, although not offered or admitted in evidence, and that it contained all claims for losses, except one, which had been pre-

sented on an ad interim claim, but omitted from the final statement by an error of the stenographer.

4. In such case, the appellate court will not return the record so as to have the statement formally admitted in evidence.

5. A claim by the insurance company that no allowance should be made for a loss because the debtor of the insured had not the rating required by the policy at the time the goods were shipped, will not be sustained where it appears that the rating was changed before the goods were shipped so as to bring it within the coverage clause of the policy, and that the company recognized its liability by making an effort to collect the claim against the insolvent estate of the debtor.

6. In such case it is immaterial that the debtor was not a subscriber to the mercantile agency mentioned in the policy as establishing the rating.

7. A claim of loss under the policy will be sustained where the insolvency of the debtor is established by competent evidence and notice thereof has been given to the insurance company.

8. In such case the fact that the notice used the term "bankruptcy" instead of "insolvency" is immaterial; the notice was sufficient to enable the insurer to protect the claim by obtaining all possible salvage.

9. A claim which might have been successfully disputed because the debtor was not rated in the mercantile agency at the time the goods were delivered, will be allowed if it appears that the company waived the objection and attempted to collect the claim.

10. A claim will be allowed where it appears that the debtor was endeavoring to secure a general settlement or compromise of creditors, within the meaning of the policy.

11. Where the policy defines insolvency of a debtor to be when he absconds, a claim of loss as to such creditor will be allowed where the creditor could not be traced, although every effort was made to find him.

12. When a credit insurance company sees fit to recognize conditions which might otherwise exempt them from liability, they cannot complain when the court holds them to their waiver.

13. If the trial judge has made an error in the company's favor in assessing the damages, and the insured has not appealed, the amount assessed will not be changed by the appellate court.

Argued February 8, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.

Appeal, No. 316, Jan. T., 1925, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1923, No.

9931, for plaintiff, on case tried by the court without a jury, in suit of Samuel S. Kershbaum v. London Guarantee & Accident Co.   Affirmed.

Assumpsit to recover losses under a policy of credit insurance.   Before BARTLETT, P. J., without a jury.

Judgment for plaintiff for $4,880.28.   Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Wm. W. Smithers,* for appellant.—This seems to be the first time that a credit insurance policy has been before any court of this State upon the points here involved and no similar case appears in reports elsewhere. The case most clearly presenting the leading characteristics of this intricate utilization of the modern law merchant, although rendered in construing policies quite different in terms, and here merely cited as convenient references to the general subject, are: Strouse v. Am. Credit Ind. Co., 46 Atl. (Md.) 328; People v. Credit Co., 166 N. Y. 416; Baer v. Credit Ind. Co., 116 App. Div. N. Y. 233; Hogg v. Credit Ind. Co., 172 Mass. 127.

Requests for findings were not separately and distinctly answered: McDermott v. Blank, 230 Pa. 392; Hoover v. Pontz, 271 Pa. 285; Clark v. Davidson, 83 Pa. Superior Ct. 79.

*David S. Malis,* for appellee, cited as to meaning of term "absconding debtor": Ives v. Curtiss, 2 Root (Conn.) 133.

OPINION BY MR. JUSTICE KEPHART, April 12, 1926:

This is an action to recover losses under a policy of credit insurance.   The relevant clauses of the policy are as follows:

"No loss is covered by this policy unless the debtor to whom the goods were shipped and delivered shall have in the latest published book of R. G. Dun & Company Mercantile Agency, at the date of shipment, a capital rating and its accompanying credit rating as tabulated below. The books of the said Mercantile Agency shall respectively govern shipments......except where the mercantile agency increases or reduces a rating by report, compiled during the currency of the latest published book." Shipments made after such report has been received shall be governed by the rating in the latest report of the agency.

Insolvency is a prerequisite to recovery and fourteen conditions are given under which a debtor shall be deemed to be in that state. When he comes within any such class, the insured is required to file a notification of claim on a form prescribed by the company. When any claim for excess loss is made under the policy a "final statement of claim" shall be made by the insured and filed with the company within thirty days after the expiration of the policy. There is an interim adjustment rider which permits partial settlement of loss and under which payments were made by defendant to plaintiff prior to the expiration of the policy. The demand before the court below was based on a final claim at the expiration of the policy. The case was tried before a judge without a jury, and an award was made in appellee's favor for the sum of $4,880.28. To this award exceptions were filed; on their dismissal, judgment was entered.

Claims under a credit insurance policy have rarely appeared in any court, and, where such instruments were under consideration, the cases present some of the leading characteristics of the modern law merchant. However, the decided cases construe policies quite different in terms from the one now under consideration, and hence have no direct bearing on our present problem.

It will serve no useful purpose to review the history of that interesting subject. Its basic principles concern such matters as past sales as a basis of premium, initial loss, co-insurance, bona fide sales and deliveries, conventional sorts of insolvency, prompt notice, final schedule and methods of calculating expiration adjustment. It has been stated that the feature of presumptive insolvency definitely dealt with in above conditions, which arise chiefly from commercial agency rating, is of very recent origin but is now generally employed in this class of policies. It is because of the violation of the spirit of the above-mentioned basic principles that appellant assails the judgment of the court below.

The case was tried under the Act of April 22, 1874, P. L. 109, prescribing the practice in the trial of civil cases by a court without a jury. Appellant complains that its requests for findings of fact and conclusions of law were not separately and distinctly answered. The act does not require the court to specifically answer all requests for findings submitted by counsel. It is sufficient if the facts found adequately cover all material points involved in the case: Com. v. Bridge Co., 216 Pa. 108; Com. v. School Dist., 241 Pa. 224, 229; Kuhn v. Buhl, 251 Pa. 348, 375. As we view the record, the court below covered all material matters in the case; though some of the requests may not have been directly answered, they were answered in the general survey of the case. It is obvious that, should the trial judge be required to answer each request separately, the court might labor unnecessarily at times answering immaterial matters having no bearing on the real controversy.

Before considering the remaining questions involved, we may say that appellant's counsel, during the course of the argument, stated of record, that, inasmuch as no defense was submitted at the trial, the questions were purely legal and agreed that "The court may deem as having had before it, as a matter of affirmative evidence, testimony tending to establish that the deliveries of mer-

chandise were made in accordance with the various accounts herein named." This admission relieved the court below from many vexatious problems that might have arisen.

Appellant urges plaintiff did not submit any final statement of claim as required by the policy. This might be fatal to its cause, as the policy unquestionably stipulates that, unless such claim is submitted, there shall be no liability on the part of the company. The court below, in discussing this phase of the case, says: "Upon examination of the record, and upon the recollection of the trial judge, we find that such claim was presented by plaintiff in this case, and the claim was in the possession of defendant's counsel, presented to various witnesses at the time of the trial, and shown to the court who was sitting without a jury. On this proof, all the claims presented were contained therein, with the exception of that of the Ansonia Dress Company; that was explained as having been presented on an ad interim claim to the company and omitted from the final claim by a mistake of the plaintiff's stenographer." The special examiner, Hon. J. Hay Brown, former Chief Justice, appointed by this court to determine the question, found the paper was not admitted in evidence: Kershbaum v. London G. & A. Co., 284 Pa. 591. The paper was shown in fact to exist. We could return the record and have the paper formally admitted, but, under the circumstances, this is not necessary, as every one knew of its existence and it satisfied the terms of the policy. We therefore accept the finding of the court below based on the certificate as conclusive; all reference to its omission as bearing on the various claims now under consideration is thereby answered.

Objection is made to the Garfield Bros. claim of $1,-556.68 because they did not have the rating required by the policy at the time the goods were shipped. It appears by the evidence of one of R. G. Dun & Company's employees that the rating of this concern was changed

from f4 to f3, the latter being within the coverage clause. The last rating was made in July, 1922, and withdrawn in October, 1922. Within these dates, the goods unpaid for were shipped. It further shows a report was sent out by R. G. Dun & Company, and received by appellee, containing the change in the rating, which brought the concern within the terms of the policy. Whether or not Garfield Bros. were subscribers to Dun & Company is immaterial unless the policy specifically required it. Non-subscribers are rated in this mercantile agency along with subscribers. It affirmatively appears that Garfield Brothers went into voluntary bankruptcy within a month after the last shipment.

There was ample evidence to show the Ansonia Dress Company was insolvent within the meaning of the policy. There was a meeting of their creditors in November, 1922, and a trustee appointed under a deed of trust, who took over all goods and merchandise for the creditors and sold them at public sale and auction for the benefit of creditors. Notice was given appellant the next day or so after the meeting of creditors; this, with the evidence associated with it, substantially complies with the terms of the policy relative to insolvency. While the notice used the term "bankruptcy," such word ordinarily implies insolvency. The notice certainly would enable the insurer to protect the claim in the name of the insured, and obtain all possible salvage, as agreed to in the policy. The objection to this claim is without merit.

The fact that there was no rating in Dun's agency of one B. Miller at the time the goods were sold and shipped would be sufficient of itself to warrant the court in refusing to allow this item. But appellant recognized it as valid. B. Miller took in as a partner his brother, Abe Miller, the firm name being changed to B. & A. Miller; it was under this name the rating appeared in the Dun's agency with a credit rating of G-3½ within the terms of the policy.

When defendant received the letter explaining the change, it accepted the rating as a compliance with the terms of the policy and there being no other objection to the claim it was properly allowed.

The claim that Bloom Brothers did not become insolvent within the meaning of the policy is likewise unfounded. It clearly appears they were endeavoring to secure a general settlement or compromise of creditors; this would bring them within the terms of the policy. The term bankruptcy was used in this notice in describing the condition into which Bloom Brothers had fallen.

Paskman was an absconding debtor. Again the notice used the word "bankruptcy," in describing this particular insolvency. Clause 10 of section 2 of the policy defines insolvency of a debtor to be when he absconds. Paskman owned an establishment on Race Street. Appellee tried several times to see him, and each time he was absent from his place of business. It was shown he usually carried a stock of $10,000 to $15,000 which had been reduced to $200 or $300. Though an effort was made every day for a week or more, the room was in charge of an errand boy and appellee was unable to see Paskman. There were no employees about the place of business, and his large stock of merchandise had disappeared. Though he did testify at the bankruptcy hearing, appellee was never able to get hold of him. He never saw him. His whereabouts could not be ascertained before that time. An absconding debtor has been defined to be, "One who lives without the state, or one who has intentionally concealed himself from his creditors or withdrawn from the reach of their suits, with intent to frustrate their just demands. One who leaves, or is about to leave, the jurisdiction, or who conceals himself within the jurisdiction for the purpose of avoiding the process of the courts": 1 C. J. 341. It has been held that an absconding debtor is one who secrets himself from his creditors in his own house: Ives v. Curtiss, 2 Root (Conn.) 133. One may successfully avoid his

creditors by concealing himself or placing himself in a position where legal process' cannot be served on him. This may also be done by going from place to place to evade meeting process servers. Under all the evidence, Paskman was an absconding debtor within the meaning of the policy. Though the trial judge may have made an error in appellant's favor in assessing damages, appellee has not appealed and is content to permit the award to stand as fixed by the trial judge.

After considering all the evidence, the court below was warranted in entering a judgment. While we appreciate that these policies should be construed so as not to permit fake insolvencies, or fake ratings, and to hold the parties definitely within their terms, nevertheless, when the company sees fit to recognize certain conditions as in agreement with the policy, which might otherwise exempt them from liability, they cannot complain when the trial judge holds them to their waiver, and fixes them with liability.

The judgment of the court below is affirmed.