Athens National Bank *v.* Ridgebury
Township, Appellant.

480

Argued January 28, 1931. Before .FRAZER, C. J., WALLING, SIMPSON, KEPHART and MAXEY, JJ.

*David J. Fanning,* with him *Lee Brooks,* for appellant.—A municipality may create debts within its current revenues, regardless of existing indebtedness, but cannot go beyond, even when payment is to be made solely out of a specially designated income: Jackson v. Boro., 280 Pa. 601; City of Erie's App., 91 Pa. 398; Wade v. Boro., 165 Pa. 479; McKinnon v. Mertz, 225 Pa. 85; Santa Cruz v. Wykes, 202 Fed. 357.

Plaintiff's statement in its entirety does not make out a case of extraordinary emergency, as to the two bridges, for the allegation is that they were rendered unsafe by floods.

In trials before the court without a jury, it has been decided that the findings of the court are to be given the same effect as that given to the verdict of a jury, but the appellate court will examine the record as in the

case of a nonsuit: Duke v. Gas Co., 220 Pa. 348; Costello v. Long, 62 Pa. Superior Ct. 13.

It is incumbent on plaintiff to show how the alleged emergency arose: Roundsley v. School Dist., 47 Pa. Superior Ct. 623; Maneval v. Twp., 141 Pa. 426; Georges Twp. v. Trust Co., 293 Pa. 364.

It is believed it has been demonstrated that no such extraordinary emergency existed in Ridgebury Township as existed in Maneval v. Jackson, Twp., 141 Pa. 426.

A municipality must live within its means and can no more increase its indebtedness, beyond its actual or expected annual income, for payment of current expenses, than for any other purpose. It is the increase of indebtedness that is forbidden, regardless of the object to be accomplished thereby: Addystone P. & S. Co. v. Corry, 197 Pa. 41; Foresman v. Twp., 297 Pa. 369; Georges Twp. v. Trust Co., 293 Pa. 364.

*H. K. Mitchell,* with him *W. G. Schrier,* for appellee. —It is not necessary for an extraordinary emergency to arise to permit township supervisors to make loans in anticipation of taxes or other revenues which they have reasonable cause to expect the township will receive: Georges Twp. v. Trust Co., 293 Pa. 364; Maneval v. Twp., 141 Pa. 426.

If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them however great the indebtedness of such municipality may be: City of Erie's App., 91 Pa. 398; Wade v. Boro., 165 Pa. 479; Reuting v. Titusville, 175 Pa. 512; Brown v. City of Corry, 175 Pa. 528; Spangler v. Galagher, 182 Pa. 277.

OPINION BY MR. JUSTICE WALLING, April 13, 1931:

The plaintiff, a national bank, brought this action of assumpsit against the defendant, a township of the second class, in Bradford County, to recover for certain

loans. The latter, the defense urged, were invalid as creating an indebtedness in excess of the constitutional limit. Jury trial was waived, and the trial by the court resulted in a final judgment for plaintiff, and defendant has appealed. While the case was stubbornly contested, both below and here, we find nothing calling for a reversal.

Complaint is made as to the inadequacy of the findings and conclusions of the trial judge. An examination of the record shows that the material facts are stated in separate paragraphs, as are the controlling legal conclusions. True, some of the defendant's requests were not categorically answered. Where, as here, however, the controlling questions are discussed and set forth in the general opinion, specific answers to the requests are not required: Kuhn v. Buhl, 251 Pa. 348; Com. v. School Dist. of Altoona, 241 Pa. 224; Com. v. Monongahela Co., 216 Pa. 108. It would be an unnecessary burden for the trial court to specifically answer every request that might be suggested, whether pertinent or not. See Kershbaum v. London G. & A. Co., 286 Pa. 213, 217. Furthermore, it must be kept in mind that the findings of facts in such case are entitled to the same weight as the verdict of a jury: McDonald Construction Co. v. Gill et al., 285 Pa. 305.

The defendant township has eighty-eight miles of public highways, which, by reason of hills and streams, are expensive to maintain. This caused the township to become financially involved, beginning as far back as 1912 and increasing until, in 1922, its liabilities were $15,788.37. This was approximately four per cent of the assessed value of the taxable property, which that year was $423,990; hence, the two per cent constitutional borrowing capacity of the township was exhausted.

The road tax levy that year was ten mills and four of the loans here involved, aggregating $2,850, were expressly made and received that year as temporary advancements to enable the supervisors to repair and im-

prove the highways in proper season under an agreement for repayment from the current revenues. As the latter greatly exceeded the loans they were valid: Jackson v. Conneautville Boro. S. D., 280 Pa. 601; Lehigh Coal and Navigation Co.'s App., 112 Pa. 360; Appeal of the City of Erie, 91 Pa. 398, 403. See also section 434, Act of July 15, 1919, P. L. 968, 970. A temporary borrowing in anticipation of current revenue and to be repaid therefrom is not an increase of indebtedness prohibited by the Constitution. As to this, the case of the City of Erie's App., supra, says (page 403): "If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created." This is quoted with approval in Wade et al. v. Boro., et al., 165 Pa. 479, 488. "Current revenues include taxes for the ensuing year and all liquid assets, such as delinquent taxes, licenses, fines and other revenues which, in the judgment of the authorities, are collectible": Georges Twp. v. Union Trust Co., 293 Pa. 364, 369. The burden was upon the defendant to show that the temporary loans could not have been paid out of current revenues (Rettinger v. Pittsburgh School Board, 266 Pa. 67), and it failed to do so. The loans were none the less valid because the supervisors used the current revenue for other purposes than their repayment. As to this, the trial judge finds: "Three small loans, aggregating $565, were made under like circumstances in 1923"; also that, "During 1921 and 1922 heavy rains and cloudbursts washed the roads and weakened bridges to the point where both were impassable. In order to make traveling safe, the money borrowed from the bank and the full amount of the tax money collected was expended."

Two other loans are involved in this suit, each for $2,150.75, one made November 17, 1922, and the other,

January 31, 1923. These were intended for and did supply funds to pay Mr. Lane, a contractor for the construction of two concrete bridges on the Barwick Turnpike, a main thoroughfare extending through the township, and in fact, through and beyond the county. A great flood in 1921 had undermined the abutments of the old bridges, so that in spite of temporary repairs they required replacement in 1922, and the state highway department ordered that they should be constructed of concrete. The trial court found that the flood which necessitated the construction of the bridges in 1922 created such an extraordinary emergency as necessitated their construction. It was the imperative duty of the supervisors to maintain reasonably safe bridges, otherwise the township might become liable for damages much greater than the cost of the new bridges. To do this, the supervisors might make temporary loans and provide for their payment by an extra tax levy. This would not violate the Constitution. What seems to be the true rule is that stated by Judge HENDERSON, in Reuting et al. v. Titusville, 175 Pa. 512, 521, quoting from Dillon on Municipal Corporations, and adopted by this court, that: "When a contract made by a municipal corporation pertains to its ordinary expenses and is together with other like expenses within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute an increasing of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts." Hence, it was sufficient that the supervisors in good faith intended to levy the extra tax to meet the expense of the new bridges when they were built. The power of road supervisors to borrow money to meet an extraordinary emergency is well settled. See Maneval v. Jackson Twp., 141 Pa. 426, 435. When an extraordinary emergency necessitates the building of bridges the supervisors are authorized to temporarily borrow

money to pay the contractor therefor (see Potters Nat. Bank v. Ohio Twp., 260 Pa. 104), when based upon a well grounded anticipation of future revenue to be derived from tax levies or other sources of income. See section 434, Act of July 16, 1917, P. L. 840, 891. Under the Act of July 16, 1917, P. L. 840, in case of extraordinary emergency, temporary debts may be contracted in anticipation of future revenue (Georges Twp. v. Union Trust Co., 293 Pa. 365); the supervisors must, however, provide for such revenue.

Aside from the question of extraordinary emergency, which the defendant strenuously denies, the township had sufficient probable sources of revenue to warrant building the bridges. The supervisors believed in good faith that the expenses thus incurred must ultimately be borne by Bradford County, and it was agreed between the supervisors and county commissioners that the former should build the bridges subject to a determination of the question of liability. The supervisors based their relief on the general Act of April 25, 1907, P. L. 104, as amended by later statutes, under which the county would be liable. The commissioners while conceding liability under the general acts urged that the earlier local Act of March 12, 1869, P. L. 325, which provided that in Bradford and Sullivan Counties the abandoned turnpike road here in question should be maintained at the expense of the townships, was not repealed by the general act. This contention was finally sustained. See Com. ex rel. Schrier v. Ruggles et al., 280 Pa. 568. But the supervisors having acted in good faith, the township is not relieved from liability because it ultimately appeared that they were mistaken as to the law. This principle is stated in Addyston Pipe and Steel Co. v. City of Corry, 197 Pa. 41, where the city created an indebtedness beyond the constitutional limit in the construction of sewers, relying upon an assessment against property, later held invalid, and the city was held liable. See also Gable v. Altoona, 200 Pa. 15.

Furthermore, the township was entitled to a reward from the State on account of constructing these bridges and in 1926 actually received one of $2,332.90. The expectation of this reward and the belief in the liability of the county may have caused the delay of the supervisors in securing permission of the court to levy an extra tax. They did, however, secure such permission and levied a ten mill extra tax for the year 1924. In December of that year they had a balance of $5,218.30 in the township treasury, from which the loans for the bridges could have been properly paid.

The judgment is affirmed.