J. HERBERT WAKEM,

RECEIVER OF THE CARIBOU NATIONAL BANK,

*vs.*

THE INHABITANTS OF THE TOWN OF VAN BUREN.

Aroostook.      Opinion, October 24, 1940.

**128**

*David Solman,* for plaintiff.
*Harry C. McManus,*
*Nathaniel Tompkins,* for defendants.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

WORSTER, J.    On report, on an agreed statement of facts. This is an action of assumpsit brought by the receiver of The Caribou National Bank against the Inhabitants of the town of Van Buren, on its promissory note given to said bank. The defendant contends that this action cannot be maintained because the loan for which the note was given was, and is in excess of the constitutional debt limit of that town; and that, even if it once had validity as a temporary loan in anticipation of taxes, yet at the time the action was brought, it could not have been, and cannot now be considered as falling within any exception to the constitutional debt-limit provision.

It appears that on April 30, 1926, said town, pursuant to authority granted by a vote of its inhabitants at a town meeting held

on March 31, 1926, borrowed of The Caribou National Bank the sum of $10,000, as a temporary loan, in anticipation of taxes, and gave therefor the note in suit. According to that vote, the loan was "to be paid for out of money raised by taxes during the current year," meaning the municipal year beginning in March, 1926; and a statement to that effect appears in the certificate written underneath the note, and signed by the municipal officers.

The note and certificate are as follows:

"$10,000.00                    Van Buren, Maine April 30, 1926.

Nine months after date the Inhabitants of the Town of Van Buren promise to pay to the order of Caribou National Bank at any Bank, Ten Thousand Dollars.
Value received.

John B. Pelletier
Joseph J. Cyr
F. D. Goud

———————————————

Selectmen of Town of Van Buren
Guy S. Cyr

———————————————

Treasurer of Town of Van Buren"

"The above is a te(r)mporary loan issued under authority granted at the annual Town Meeting of the Inhabitants of the Town of Van Buren, held on March 31st, 1926, and is to be paid out of money received from taxes assessed during the Municipal year beginning March, 1926, and we certify that the same is a legal obligation of the Inhabitants of said town of Van Buren.

John B. Pelletier
Joseph J. Cyr
F. D. Goud

———————————————

Selectmen of Town of Van Buren
Guy S. Cyr

———————————————

Treasurer of Town of Van Buren."

It is provided, among other things, in Article XXXIV of the Amendments to the Constitution of Maine, that:

"No city or town having less than forty thousand inhabitants, according to the last census taken by the United States, shall hereafter create any debt or liability, which single or in the aggregate, with previous debts or liabilities shall exceed five per centum of the last regular valuation of said city or town; provided, however, . . . that the adoption of this article shall not be construed as applying . . . to temporary loans to be paid out of the money raised by taxes during the year in which they were made."

The evident purpose of such a debt-limit provision is to prevent the abuse of municipal credit, which might result in ruinous taxation, and to protect the tax payers and their property. I Dillon on Municipal Corporations (5th ed.), section 191, page 342; 6 McQuillin on Municipal Corporations (2d ed.), page 9.

And it is an absolute bar to an action against a town on any of its indebtedness which falls within the constitutional prohibition, even although the debt may have been incurred for a most worthy cause and under urgent and pressing necessity. *Blood* v. *Beal*, 100 Me., 30, 60 A., 427.

At the time the loan was made for which the note in this action was given, the town of Van Buren was indebted in an amount in excess of its constitutional debt limit, and all persons then dealing with the town were charged with notice of that fact. *Merrill* v. *Harpswell*, 120 Me., 25, 112 A., 834; *German National Bank* v. *Covington*, 164 Ky., 292, 175 S. W., 330, 332; McQuillin on Municipal Corporations (2d ed.), volume 6, page 7, note; Id., volume 3, section 1268.

So no recovery can be had here unless this loan falls within the "temporary loan" proviso in the constitution. By the express terms of Article XXXIV, the debt-limit provision has no application to temporary loans to be paid out of the money raised by taxes during the year in which they were made.

When this loan was made in 1926, it was only a temporary one, to be paid out of taxes raised during the municipal year beginning in March, 1926. But the defendant contends that since it was not paid

in that year out of the money raised by taxes during the year in which the money was borrowed, it lost its character as a temporary loan, leaving it only an ordinary town debt in excess of the debt limit of the town, and therefore now unenforcible.

The validity of a municipal debt upon which an action is brought, so far as the limitation of indebtedness is concerned, must be determined as of the time when the debt was incurred. *Addyston Pipe & Steel Company* v. *City of Corry*, 197 Pa. St., 41, 46 A., 1035, 80 Am. St. Rep., 812; *Scranton Electric Company* v. *Borough of Old Forge*, 309 Pa., 73, 163 A., 154.

And, unless otherwise provided in the constitution, a debt of a municipality, valid when incurred, will not be rendered invalid by the mere failure of the municipal officers to pay it out of the proper tax money when collected. See note, 92 A. L. R., page 1312; *Athens National Bank* v. *Ridgebury Township*, 303 Pa., 479, 154 A., 791, cited with approval in *Scranton Electric Company* v. *Borough of Old Forge*, supra.

In *Athens National Bank* v. *Ridgebury Township*, supra, the court said:

> "The loans were none the less valid because the supervisors used the current revenue for other purposes than their repayment."

And in a somewhat analogous case, the court, in *City of Cedar Rapids* v. *Bechtel*, 110 Iowa, 196, 81 N. W., 468, said:

> "It is true, there was a misappropriation of a part of the current revenue of the years 1894 to 1898, inclusive; but such wrongful act on the part of the officers of the city cannot, under the agreed facts in this case, affect the validity of these warrants."

Therefore, since the debt in the instant case was valid when made, the plaintiff's action thereon will lie, unless recovery is barred by some constitutional provision.

The defendant contends that it is so barred, and, in support of this contention, relies on *Blood* v. *Beal*, supra, in which it is said:

> ". . . if such a loan although temporary in its inception, or any part thereof, is carried over, in any form, into the next

municipal year, it then loses its temporary character and becomes a debt or liability of the city within the prohibition of the above amendment."

In that case, the proviso relative to temporary loans in anticipation of taxes, as it was then stated in Article XXII of the Amendments to the Constitution, was explained and its meaning established.

About six years after that decision was rendered, Article XXII was amended by the adoption of Article XXXIV, which also contains provisos relative to temporary loans in anticipation of taxes. We need consider, however, only that proviso which is included in the foregoing quotation from Article XXXIV, which the defendant claims is similar to the proviso included in Article XXII, and, he urges, should receive the same construction given to the last mentioned proviso in *Blood* v. *Beal,* supra.

It is a general rule that a reenactment, in substantially the same language, of a constitutional provision which had been previously construed and explained by the court, carries with it the same meaning previously attributed by the court to the earlier provision, in the absence of anything to indicate that a different meaning was intended. 6 R. C. L., section 49, page 54; 16 C. J. S., page 76; 11 Am. Jur., page 684; Wichita Falls, use of *Whitham & Co.* v. *Williams,* 119 Tex., 163, 26 S. W. (2d), 910, 79 A. L. R., 704; *Sexauer et al.* v. *Star Milling Company,* 173 Ind., 342, 90 N. E., 474, 26 L. R. A. (N. S.), 609; *Banks* v. *State,* 207 Ala., 179, 93 So., 293, 24 A. L. R., 1359; *Cannon* v. *May et al.,* 35 S. W. (2d), 70.

The only difference between these provisos is that in Article XXXIV the comma which appeared after the word "taxation" in Article XXII is omitted, the word "taxes" is substituted for "taxation," the word "the" is inserted before the word "money," and, in the last line, "were" is used in place of "are." These changes do not, of themselves, indicate that the people intended this proviso in Article XXXIV should have any different meaning than had been previously given to the proviso in Article XXII by the court in *Blood* v. *Beal,* supra.

Nor is there anything in the preamble of the act (Chapter 221, Resolves of Maine, 1911), by which Article XXXIV was submitted

to the people for adoption, to indicate any different intention on the part of the legislature. The amendment proposed in that preamble deals exclusively with an additional proviso relative to the debt limit of cities having a population of forty thousand inhabitants or more, which does not affect the situation here.

But even if the proviso now under consideration should be construed as having the same meaning which was given to the proviso in Article XXII by the court in *Blood* v. *Beal*, supra, that would not be decisive here. The issue presented here is not the same as the issue presented in *Blood* v. *Beal*. There the question was whether or not a previous temporary loan made in anticipation of taxes, but not paid during the year in which it was made, should be added to other debts of the city in determining whether or not a later proposed indebtedness was in excess of the city debt limit, and the court held that it should be so added.

That is not the question before us. The issue here is not whether this loan to the town of Van Buren should be added to other debts in order to determine whether or not some later indebtedness exceeds the debt limit, but whether an action will lie on the note which was given for the temporary loan.

The defendant further relies on *Doland* v. *Clark et al.*, 143 Cal., 176, 76 P., 958, in which the California court said:

> "It was evidently the intention of the framers of the Constitution to make the income and revenue of each year pay the indebtedness and liabilities incurred during such year, and that the revenues and income of a subsequent year should not be applied to pay liabilities of a past fiscal year."

That constitution, however, is unlike ours. It is expressly provided in the California constitution that no city "shall incur any indebtedness or liability in any manner or for any purpose, exceeding in any year the income and revenue provided for it in such year."

In *City of Springfield* v. *Edwards*, 84 Ill., 626, and in *Law et al.* v. *The People*, 87 Ill., 385, also cited by the defendant, the debt-limit provision in the Illinois constitution was considered. It is recited in that constitution as follows:

> "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted, in any

manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein . . ."

With reference to the Illinois constitution, the court, in *City of Springfield* v. *Edwards*, supra, said:

"The prohibition is against becoming indebted — that is, voluntarily incurring a legal liability to pay, 'in any manner or for any purpose,' when a given amount of indebtedness has previously been incurred."

But neither the constitution of California nor that of Illinois contains any recital to the effect that the debt-limit provision did not apply to temporary loans to be paid out of money raised by taxes during the year in which they were made, as does the constitution of Maine, and so the three cases last cited are not in point.

A constitutional provision should receive such a liberal and practical construction as will permit the purpose of the people therein expressed to be carried out, if such a construction is reasonably possible.

In 11 American Jurisprudence, at page 675, the rule is laid down as follows:

"Constitutions are to be construed in the light of their purpose and should be given a practical interpretation so that the plainly manifested purpose of those who created them may be carried out."

It is evident that this proviso was adopted for the very practical purpose of enabling towns and cities up to their debt limit to borrow money in anticipation of taxes already assessed, in order that they might be able to continue to carry on their necessary governmental activities. The proviso deals with a necessary condition of the undertaking into which a borrowing town must enter, in order to make a valid loan. It does not deal with the effect of a failure to actually perform that condition. Although a town making such temporary loans must, of course, undertake to pay them out of the money raised by taxes during the year in which they were made, *as was done in this case*, yet there is nothing in the proviso to the effect that such

temporary loans will become invalid if not so paid, and we cannot read such a provision into the constitution. See *City of Georgetown* v. *Elliott et al.*, 95 Fed. (2d), 774.

Moreover, to do so would be to seriously impair, if not utterly defeat the purpose of the proviso. A right to borrow money is of no practical importance if no one will lend. And it is not to be expected that financial institutions, owing to their stockholders the duty of making loans in a businesslike way, or individual money lenders, would lend money to towns or cities if the mere failure to make seasonable payments out of the proper tax money would render the loans invalid. The adopters of this proviso could not have intended to destroy the practical effect of the proviso they adopted. So, in construing this provision, it is not to be assumed that they intended such temporary loans, valid when made, should become invalid if not actually paid out of the money raised by taxes during the year in which they were made, in the absence of apt words indicating such intention. And no such words were used.

In *City of Georgetown* v. *Elliott et al.*, supra, an action was brought against the City of Georgetown, South Carolina, on its note for $8,000, dated September 15, 1931, which contained its general promise to pay, and recited that it was issued for money borrowed for corporate purposes in anticipation of the municipal taxes for the current year. The declaration contained no allegation that the taxes for 1931 had been collected, or that they were available for the payment of the note.

The constitution of that State, after limiting the amount of bonded debts of municipalities, contained the following provision:

"Provided, That this Section shall not be construed to prevent the issuing of certificates of indebtedness in anticipation of the collection of taxes for amounts actually contained or to be contained in the taxes for the year when such certificates are issued and payable out of such taxes."

The city made the point that the note was not a general obligation of the city, but was payable only out of the taxes for that year. The court, however, held that it was a valid indebtedness of the city, for which a general judgment could be rendered, even although there was no allegation or proof that taxes available for payment

had been collected from a levy in the year in which the note was issued, and quoted with approval from the unreported case of *Citizens and Southern National Bank of Savannah* v. *The City of Florence*, as follows:

" 'It is argued, however, that tax anticipation notes must be payable out of the taxes pledged, and if for any reason these taxes fail or are dissipated, the holder of the note can collect nothing from the city. I cannot accede to this proposition. The framers of the Constitution, when they permitted tax anticipation notes, must be deemed to have known something of the practical effect that such a construction of the law would have upon the credit of the city. The holders of these notes are not responsible for the action of the city authorities in taking the taxes which were pledged for the notes and using them for other corporate purposes. This the holders of the notes could not prevent, nor were they required to stand guard over the collections and insist as each collection came in on its being applied to their notes. That would be utterly impracticable. The city authorities are not their agents, but the agents of the people of Florence. They had a right to assume that the city officials would not unlawfully divert these pledged taxes. To hold that because the city officials have taken the pledged taxes and used them for other corporate purposes, the city thereby escapes liability, would render these tax anticipation notes unsalable. No business man would lend money on such notes.' "

Therefore, the defendant's temporary loan in anticipation of taxes, having been validly made, was not rendered invalid by the mere failure of the municipal officers to pay it out of the money raised by taxes during the year in which it was made.

We find that the interest on said note from the date of its maturity up to September 1, 1932, has been overpaid to the extent of $4.88; and on March 2, 1935, the defendant paid $350 on the principal of said note.

We further find that the plaintiff is entitled to recover of the defendant the sum of $10,000, with interest thereon at the rate of six per centum per annum from September 1, 1932, to the date on which judgment shall be entered in this case in the court below,

after deducting therefrom said sum of $350, with interest thereon at the rate of six per centum per annum from March 2, 1935, to the date of the rendition of such judgment, and said sum of $4.88.

The case is remanded to the court below with the mandate that judgment be entered for the plaintiff against the defendant in accordance with this opinion.

*So ordered.*

(BARNES, C. J., having retired, did not join in this opinion.)