CLYDE MOORES D.B.A.

E. & A. MOORES

*vs.*

THE INHABITANTS OF THE TOWN OF SPRINGFIELD

Penobscot.   Opinion, February 28, 1949.

*Atherton and Atherton,* for plaintiff.

*E. Donald Finnegan,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, MERRILL, JJ.

MERRILL, J. Exceptions to acceptance of report of referee. This is an action of special assumpsit brought by Clyde A. Moores, described in the writ as doing business under the name and style of E. & A. Moores, on twenty town orders drawn by the selectmen of the defendant town

upon the treasurer thereof. The orders were all negotiable in form, being payable in each instance to named persons or order. The orders were presented for payment and were all accepted in writing by the town treasurer with the exception of three which were accepted by the assistant treasurer, one of which was directed to the town treasurer, Jennie Monroe, and accepted by her as assistant treasurer. The declaration consists of twenty separate counts, one on each of the several orders. The plaintiff sues as either the payee of the order or as endorsee thereof. The orders were introduced in evidence and those payable to third parties are all endorsed with the exception of two, they being those numbered 576 and 145. The orders may be grouped as orders issued to pay for pauper supplies, for the salary of the plaintiff as a selectman, one for a bush scythe and the remainder for labor on roads. The pauper supplies are divided between supplies for state paupers and supplies for a pauper belonging to a neighboring town. The road work is divided between labor on third class road, maintenance of third class road, labor on town road, labor on state road, labor on improved road and "snow plowing."

The plea was the general issue with a brief statement. The brief statement set forth the following grounds of defense: (1) the statute of limitations to the first thirteen counts; (2) that at the time of execution of the several orders sued upon the defendant town was indebted in excess of the amount allowed by law; (3) that the officers executing the orders were never authorized to sign the same and had no authority to obligate the defendant town; (4) that the plaintiff at the time the orders were executed was a selectman of the town of Springfield and, as such, was an interested party because some of the orders were payable to him and the other orders came directly into his possession "which is contrary to R. S., Chap. 80, Sec. 78." The defendant also filed an affidavit denying signature and execution of the orders in accordance with Rule X of the Supreme Judicial and Superior Courts.

The case was referred under Rule of Court with right of exceptions in matters of law reserved. The referee filed a report finding for the defendant. Written objections were filed to the acceptance of the report. The Justice of the Superior Court presiding accepted the report and to his ruling exceptions were filed and allowed and it is on these exceptions that the case is before us.

Rule XXI of the Supreme Judicial and Superior Courts provides,

> "Objections to any report offered to the court for acceptance, shall be made in writing and filed with the clerk and shall set forth specifically the grounds of the objections and these only shall be considered by the court."

As said of this Rule in *Camp Maqua* v. *Town of Poland,* 130 Me. 485, 486; 157 A. 859, 860:

> "The invariable practice in this state has been that there must be a strict compliance with its provisions, if the exceptions are to be considered by this court. *Bucksport* v. *Buck,* 89 Me. 320; 36 A. 456; *Witzler* v. *Collins,* 70 Me. 290; 35 Am. Rep. 327; *Mayberry* v. *Morse,* 43 Me. 176."

The first objection, that there is "no evidence to support the findings of such facts as must necessarily have formed the basis of said decision," is in effect a statement that the referee found for the defendant without any evidence to support his findings. This raises a question of law upon which the plaintiff is entitled to be heard on his exceptions to the acceptance of the report. *Staples* v. *Littlefield,* 132 Me. 91; 167 A. 171.

The second ground of objection "that said decision is based upon an erroneous application of the established rules of law" is too general, and the exception based thereon cannot be considered. This objection does not in any way *specify* in what manner, or which rules of law were erroneously applied. *Thromulous* v. *Bank of Biddeford,* 132 Me. 232; 169 A. 307.

The other specific objections are in effect covered by the first general objection and the exceptions based thereon will be disposed of by our determination of the exception based on the first objection. They all relate to and are based upon the alleged erroneous application by the referee of the constitutional limitation of the amount of municipal indebtedness to the town orders given for pauper supplies, labor on town road and the order given for selectman's salary.

As above stated, this action is special assumpsit brought by plaintiff either as payee or endorsee of town orders. The fact that the orders are negotiable in form, and in some instances have been endorsed by the payee thereof to the plaintiff does not exclude any defense available to the town at the time of their issue. Whoever receives them either as payee or endorsee does so subject to any legal defense to the claim for which they were issued. *Sturtevant* v. *Liberty*, 46 Me. 457. As well stated in *Parsons* v. *Monmouth*, 70 Me. 262, 264:

> "The general financial officers of towns frequently draw orders upon the treasurers for the payment of some legitimate indebtedness of the town, but such instruments are mere vouchers for the treasurer's disbursements. And though frequently made negotiable in form and therefore have the quality of negotiability so far as to authorize the holder other than the payee to bring his action in his own name if occasion requires, still they are in nowise commercial paper free from equitable defenses, in the hands of *bona fide* indorsees. *Willey* v. *Greenbush*, 30 Maine, 452. *Sturtevant* v. *Libbey*, *(Liberty)* 46 Maine, 457. *Emery* v. *Mariaville*, 56 Maine, 315. *Bessey* v. *Unity*, 65 Maine, 342. Any new counter to this in *Chamberlain* v. *Guilford*, 47 Maine, 135, is not sound."

It therefore follows that any defense which existed in favor of the town against the claims for the payment of which these orders were issued is available to the town as a defense to the orders.

The defendant claims that the plaintiff cannot recover on any of these orders because he was a selectman of the town of Springfield and, as such, was an interested party in the orders which were made payable to him or which came into his possession by endorsement, as the defendant says, in violation of the provisions of R. S., Chap. 80, Sec. 78.

We held in *Tuscan* v. *Smith*, 130 Me. 36, 42; 153 A. 289; 73 A. L. R. 1344, that Sec. 43 of Chap. 4, R. S., 1916, of which R. S., 1930, Chap. 5, Sec. 61 and R. S., Chap. 80, Sec. 78 are verbatim reenactments, has reference only to cities, and has no application to towns or the municipal officers of the town. As all of the town orders in suit are signed by all three members of the respective Boards of Selectmen, the issuing of such orders to the plaintiff was not in violation of R. S., 1930, Chap. 5, Sec. 60, now R. S., Chap. 80, Sec. 77, the plaintiff being but one of the three selectmen acting in the premises. *Tuscan* v. *Smith, supra.*

The question of legality of these orders due to the fact that the plaintiff was a selectman of the defendant town must be determined by the rules of the common law. It is true that certain of the orders are for pauper supplies furnished by the plaintiff or the firm of which he was a member to the defendant town. The relief of paupers, however, is not in the hands of the selectmen of towns but in the hands of the overseers of the poor. The record in this case fails to show that the plaintiff was an overseer of the poor or that in his official capacity as selectman he had any duties to discharge with respect to the furnishing of these pauper supplies. The record does not disclose facts which would make the decision of *Lesieur* v. *Inhabitants of Rumford,* 113 Me. 317; 93 A. 838, applicable to the instant case.

In the absence of special circumstances, of which there is no evidence in the record in this case, the law does not prevent a selectman, who was one of those issuing a town order negotiable in form, from acquiring the same as an endorsee

thereof, and enforcing the same against the town to the same extent that the original payee thereof could have enforced the same.

There is, however, another defense which may prevent recovery on these orders for pauper supplies which are made payable to E. & A. Moores. None of these orders are endorsed. The plaintiff brought this action in his own name alleging in the writ that he was doing business under the firm name and style of E. & A. Moores. The present record leaves it doubtful as to whether or not E. & A. Moores was in fact a partnership, of which the plaintiff was a member, or whether it was a mere trade name under which the plaintiff alone conducted his business at the time these orders which are numbered 217, 284, 285, 12, 151, 697 and 157 were issued. The referee in his findings at one place states: "the plaintiff, who was one of the firm of E. & A. Moores," etc. If they were issued to a partnership of which the plaintiff was only one of the members, he has no right to maintain an action on them in his own name in the absence of endorsements to him or other special circumstances enabling him so to do. Nonjoinder of a party plaintiff in an action *ex contractu* is a good defense under the general issue. *Marshall* v. *Jones,* 11 Me. 54; 25 Am. Dec. 260; *White* v. *Curtis,* 35 Me. 534.

Neither is the plaintiff entitled in this action to recover on orders numbered 576 and 145, they having been issued payable to the order of Walter Boyington and not having been endorsed by him.

As to the defense of the statute of limitations, there were but two orders which were dated more than six years prior to the date of the plaintiff's writ, and as to these orders, the referee states in his report: "It was admitted that orders No. 6 and 166 were outlawed."

The referee further states in his report: "The signatures on all the orders were admitted; and it was admitted that

Selectman Clyde Moores, the plaintiff, who was one of the firm of E. & A. Moores, came into possession of the orders 'rightfully.' "

The remainder of the town orders, nine in number, are not affected by these apparent, possible or actual infirmities. To these orders as well as the others, the defendant seeks to interpose the defense that they were issued in violation of the debt limit provision of our constitution.

So much of Article XXII, as amended by Article XXXIV, as applies to the defendant town is as follows:

> "No city or town having less than forty thousand inhabitants, according to the last census taken by the United States, shall hereafter create any debt or liability, which single or in the aggregate, with previous debts or liabilities shall exceed five per centum of the last regular valuation of said city or town; xxxx; and provided further, that the adoption of this article shall not be construed as applying to any fund received in trust by said city or town, nor to any loan for the purpose of renewing existing loans, or for war or to temporary loans to be paid out of the money raised by taxes during the year in which they were made."

Whether or not a town order payable at sight, directing the payment of an obligation of the town is void because in excess of the constitutional debt limit of the town, depends upon whether the *obligation for which it was given* was valid and enforcible when incurred. This depends upon the amount of the indebtedness of the town in relation to the valuation of the town at the time of the incurring of the original obligation, not at the date of the drawing of the town order. *Cahill-Swift Mfg. Co.* v. *City of Bardwell,* 277 S. W. (Ky) 812; 211 Ky. 482. See also *Wakem* v. *Van Buren,* 137 Me. 127, 131; 15 A. (2nd) 873, 875, where we said:

> "The validity of a municipal debt upon which an action is brought, so far as limitation of indebted-

ness is concerned, must be determined as of the time when the debt was incurred. *Addyston Pipe & Steel Company* v. *City of Corry*, 197 Pa. St. 41; 46 A. 1035; 80 Am. St. Rep. 812; *Scranton Electric Company* v. *Borough of Old Forge*, 309 Pa. 73; 163 A. 154."

The defendant's brief statement evidently sought to invoke the defense that all of the orders sued were void as in excess of the constitutional debt limit of the defendant town. The *brief statement,* as such, was not sufficient for the purpose. It set forth for the various pertinent periods the assessed valuation of the town, and the indebtedness of the town during each period and then alleged "said sum of indebtedness was in excess of that permitted under the *Statutes of the State of Maine."* It is elementary that the limitation upon municipal indebtedness in this state is not *statutory* but *constitutional,* unless it be said that although silent thereon the statutes only permit a town to do that which the constitution permits. The brief statement, however, fails to properly set forth facts which show that the town had exceeded its debt limit in any of the periods mentioned. True in each period it sets forth facts which show that there was an indebtedness of more than five per centum of the appropriate referable valuation of the town. In no case, however, does it state that this indebtedness was "exclusive of debts or temporary loans made in anticipation of the collection of taxes, and to be paid out of money raised by taxation, during the year in which they were made,". In *Adams* v. *Waterville,* 95 Me. 242; 49 A. 1042, 1043, it was held that it was incumbent upon the town to prove such situation by competent testimony. As proof of the facts alleged in the brief statement would not have sustained the defense to the orders based on the claim that they exceeded the constitutional debt limit, the *allegations* are an insufficient statement of such defense. Neither does the proof cure the defect in allegation. No evidence was offered as to valuations or indebtedness. There was an admission or agreement which is as follows: "It has been agreed that

at the time these orders complained of were executed, that the town had exceeded its constitutional debt limit." There is no evidence as to when the obligations for which the orders were issued were incurred, nor is there evidence that the orders were issued contemporaneously with the incurring of the obligations. There is neither allegation nor evidence that at the time the services were rendered or the goods sold for which these orders were given the town of Springfield had exceeded its debt limit. As said in *Adams* v. *Waterville, supra:*

> "The burden of proving that this was the case, and that, therefore the municipality could not create this liability, was clearly upon the defendant, as was decided by this Court in *Lovejoy* v. *Foxcroft,* 91 Maine, 367; 40 A. 141."

It may well be that the necessary facts to establish that the defendant town had exceeded its constitutional debt limit are susceptible of proof. On that question we are not called upon to express an opinion. Cases are to be decided upon the record actually presented to the court, not upon what it may assume *could* have been established. Courts may draw legitimate presumptions from facts established by evidence. They have no right to make charitable assumptions without evidence to support them, to obviate results flowing from the omission to prove facts essential to maintain a cause of action or establish a defense. This is true whether such omission be the result of inexcusable carelessness or inadvertent error on the part of counsel. If and when this case is retried, perhaps a record will be taken out which will properly present *all* of the facts to the court, and so enable it to finally determine the case upon its real merits and in accord with all of the very important and grave constitutional questions which the present incomplete and inadequate record indicates may be involved in and necessary to its final decision. The amount in issue in this cause is comparatively small measured in dollars and cents. The indicated constitutional questions, however, bearing

upon the fiscal affairs of towns and their administration as subdivisions of the state are of grave importance.

The provisions of our organic law limiting the power of municipalities to incur indebtedness are binding not only upon the municipalities and those who deal with them, but upon the courts as well who must enforce them. They are not, however, self executing. Municipalities which seek to escape liabilities, otherwise incurred in good faith and within their corporate powers, on the ground that they thereby violated the debt limit provisions of the constitution have the burden of proving every essential fact to establish the bar. They are held to strict proof of the existence of the necessary facts. Of course, presumptions from proven facts will be available to them, but assumptions not based on proven facts are of no avail. There is no presumption that because a town is indebted beyond its constitutional limit at the time its officers issue a town order that it was so indebted at the time it incurred the obligation for the payment of which the order was issued. *Adams* v. *Waterville, supra,* is an example of how strict and technical are the requirements of proof imposed upon municipal corporations in establishing this defense.

While the foregoing considerations will dispose of the contention that these orders were void as issued in violation of the constitutional debt limit, even were the defendant town indebted beyond its constitutional limit at the time it incurred the obligations for which these orders were issued, there is another ground which requires that the exceptions be sustained.

These orders were all issued for ordinary "current expenses" of the town, viz.: support of paupers, labor on roads of various classes, snow plowing and the salary of a selectman. They were all of the type of expenses usually and ordinarily paid out of the available current revenues of the towns.

We have not heretofore been called upon to render actual decision as to whether or not obligations incurred by a town which is already indebted beyond the limit allowed by the constitution, for ordinary current expenses and to be paid out of available current revenues, are void. Upon this question the courts are not in entire harmony but as said in 38 American Jurisprudence, Page 126, Sec. 433:

> "The general rule with respect to constitutional or statutory debt limit provisions which do not specifically exempt from their operation obligations for which money is appropriated at the time of their creation is that even though such obligations are not specifically exempted, they are not within the operation of the debt limit provisions if an appropriation is made at the time of their creation from funds already in existence or prospective and subject to appropriation. The rule, as stated above, places emphasis upon the appropriation. There is another class of cases related to the cases supporting this rule in that they all involve anticipation of revenue. The decisions of the latter class emphasize the purpose of the expenditure. There is a relationship between the two situations and the decisions in the one are often cited for the other. There are many cases which may be said to support the view that an obligation pertaining to ordinary current expenses, which is, together with other like expenses, within the limit of dependable current resources, does not constitute indebtedness within provisions limiting the amount of indebtedness."

The authorities upon this subject are collected, discussed and analyzed in the cases referred to in the notes to the section just quoted, and especially in the exhaustive note found in 92 A. L. R. 1302 et seq., supplemented by note in 134 A. L. R. 1400 et seq., as well as in Dillon Municipal Corporations, 5th Ed., Secs. 194 and 195 and McQuillin Municipal Corporations, Sec. 2378 and 44 C. J., Page 1128.

If the words, *debt* and *liability*, be interpreted according to their most inclusive signification, one is forced to admit

that a liability incurred by a town for its "ordinary current expenses to be paid for out of its available current revenue" is a debt or liability of the town. This would be true no matter how brief the lapse of time between the incurring of the liability and its discharge, and whether or not there were cash on hand for its discharge. To avoid creation of such debts or liabilities the transactions of towns, indebted beyond their allowable limit, would have to be conducted on an absolutely *cash* basis. Goods purchased would have to be paid for either in advance or contemporaneously with their delivery; services, including labor, would have to be paid for in advance. Such payments would have to be made in *cash*. Checks and orders could not be used for they in turn would constitute liabilities. Town officers could not draw them, for they can only draw legal orders. Disbursing officers could not pay them, for they can only honor legal orders. Such a narrow interpretation of the words *debt* or *liability* in statutes or constitutions imposing a debt limit upon municipal corporations would paralyze the legal functioning of such of them as might have reached or exceeded their existing debt limits. Such a result would be absurd, and unless absolutely required, the words *debt* or *liability* in debt limit statutes or constitutions should not be so interpreted as to bring about such a result.

Consequently, the terms "debt or liability," in constitutional and statutory provisions limiting the same, have been interpreted, by many courts, in such a way as to allow towns indebted beyond their debt limit to function in the ordinary and normal manner in which municipalities must conduct their business; and the liabilities incurred for current expenses to be paid for out of current revenues have been treated as cash transactions and not as included in the phrase "debt or liability" contained in the constitutional or statutory provision. As above stated, our court has not heretofore been called upon to actually decide this question.

With the general principle that obligations for current expenses to be paid out of current revenues, incurred by towns already indebted beyond the constitutional debt limit, are not debts or liabilities within the prohibition of the constitution we are in accord. This general principle, however, is subject to qualifications and limitations. To attempt to define or to exclusively enumerate such qualifications and limitations at this time would be unwise. Such qualifications and limitations should be determined only when and if actual cases involving the same are presented to us for determination. There is, however, one general qualification of this principle which is involved in the issues here presented, and that is, that an obligation for a current expense to be paid out of current revenues will be a debt or liability within the terms of the constitutional prohibition if there are no current revenues available for its payment *at the time such current expense is incurred.* Revenues are not currently available unless they are produced or to be produced by taxes already assessed, or to be assessed for the instant municipal year to raise money already duly appropriated; or unless they are revenues already accrued or to accrue to the town absolutely and available or to be available for the purpose of paying or reimbursing payments for the current expense of the kind incurred. For example, such school, highway, pauper or other funds received or to be received from the state for the current municipal year absolutely and as of right under statutory provisions are to be included in current revenues, the same as are current uncollected taxes already assessed or to be assessed. Neither are revenues currently available after the revenue applicable to the discharge of the particular current expense in question has been exhausted or the full amount of the appropriation therefor expended or obligated.

Although we have not heretofore announced this rule the same seems to have been foreshadowed in the dictum found

in *Reynolds* v. *Waterville,* 92 Me. 292, 303; 42 A. 553, 555, where we said:

> "In interpreting this constitutional provision we believe we would be willing to adopt the middle doctrine on which some of the authorities stand, called by counsel for respondents the rule of reconciliation, which allows a municipal corporation, although its indebtedness has already reached the constitutional limit, to make time contracts in order to provide for certain municipal wants which involve only the ordinary current expenses of municipal administration, provided there is to be no payment or liability until the services be furnished, and then to be met by annual appropriations and levy of taxes; so that each year's services shall be paid for by each year's taxes; the scheme being variously denominated in the cases as a business, or cash, or pay-as-you-go transaction, and the like."

The question seems to have been reserved for later consideration in *Adams* v. *Waterville,* 95 Me. 242, 243; 49 A. 1042, 1043, where we said:

> "It is unnecessary to consider whether or not, if the liability created by the plaintiff's employment and performance was to be paid for as soon as the services were performed, and was thus a cash transaction, it would come within the inhibition of the provision of the constitution, because the case does not show that this liability in the aggregate with previous debts or liabilities exceeded five per centum of the last regular valuation of the city."

Neither is this conclusion inconsistent with the decision of *Tractor Co., Inc.* v. *Inhabitants of Anson,* 134 Me. 329, 331; 186 A. 883, 884, in which we said:

> "At the annual town meeting of March 5, 1934, under Article 22, the Town of Anson had voted to raise and appropriate $2,500
> 'for the removal of snow, sanding streets and

walks, and erecting snow fence, said appropriation, if any, to be available for expenditure until May 1, 1935.'

But the moneys of this appropriation had been entirely expended when this contract for the lease of the snow plow was signed. The record further shows that the town did not have sufficient funds to pay the rental charge agreed upon and could not negotiate a loan."

Under the rule in *Adams* v. *Waterville, supra,* the defendant town in this case in order to establish the defense that, in incurring the several liabilities sued upon, it violated the constitutional debt limit, has the burden of proof to establish its contention. As these obligations are all of the class known as "current expenses" to establish this defense as to them the burden of proof was upon the defendant to show that each obligation in question was incurred in violation of the constitutional provision. That burden of proof is not sustained by showing merely that at the time each obligation was incurred the town was indebted beyond the amount allowed by the fundamental law.

To maintain the burden of proof which is upon it, the defendant has to go further and prove by a fair preponderance of the evidence that the particular obligation for a current expense *was not incurred* to be paid out of revenues currently available therefor. To do this, the town must establish that there were no current revenues available for the payment of the current expense at the time it was incurred and this, whether such unavailability of current revenues be due to lack of appropriation therefor, prior exhaustion of current revenues or otherwise.

While it is true, as we said in *Tractor Co., Inc.* v. *Inhabitants of Anson, supra,*

"One who contracts with a city or town, by which an indebtedness or liability is created, must, at his

peril, take notice of its financial standing and condition and satisfy himself as to whether its debt limit is or will thereby be exceeded.",

nevertheless, there is nothing inconsistent with this principle in requiring the town which seeks to avail itself of this defense to establish it by a fair preponderance of the evidence. *Tractor Co., Inc.* v. *Inhabitants of Anson* by subjecting one who contracts with a town to the risk that his contract may be void, if in excess of the debt limit of the town, does not thereby cast upon him the burden of proving that it is within the limit set by the constitution. The burden of proof is not on the plaintiff to negative this defense but is upon the defending town to establish it.

Authorities from other states upon this precise phase of burden of proof are meager. So far, however, as we have discovered the views expressed by other courts are in accord with this rule which we have announced. In the case of *Rettinger* v. *School Board*, 109 A. (Pa.) 782 at 784; 266 Pa. 67, the court said:

> "In so far as disclosed by the record, the contract when made was within the limit of the current revenues of the school district, and, so long as the board did not exceed such revenues and such income as may be derived from special taxation, no objection can be made to the creation of the indebtedness. Erie City's App., 91 Pa. 398; Addyston Pipe & Steel Co. v. Corry, supra. The defendant failed to produce evidence showing current revenues were insufficient to meet the indebtedness, and, so far as the record shows, the school board did not violate the constitutional provision requiring it to pay as it goes when certain limits have been overstepped."

In another Pennsylvania case, *Athens Nat. Bank* v. *Ridgebury Tp.* 154 A. 791, 792; 303 Pa. 479, the court said:

> " 'If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them,

however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created.' This is quoted with approval in Wade et al. v. Oakmont Borough et al., 165 Pa. 479, 488; 30 A. 959, 'Current revenues include taxes for the ensuing year and all liquid assets, such as delinquent taxes, licenses, fines, and other revenues which, in the judgment of the authorities, are collectible.' Georges Township v. Union Trust Co., 293 Pa. 364, 369; 143 A. 10, 15. The burden was upon the defendant to show that the temporary loans could not have been paid out of current revenues (Rettinger v. Pittsburg School Board, 266 Pa. 67; 109 A. 782), and it failed to do so."

In *McNeill* v. *City of Waco*, 89 Tex. 83; 33 S. W. (Tex.) 322, at 324, it is said:

"If it should appear from the pleadings or the face of the obligation that the subject of the contract was clearly a matter of ordinary expenditure, such as repairing streets or salary of an officer, this would be sufficient to bring it within the exception, for the prima facie presumption would be that such claim was intended to be paid out of the current revenues annually collected for payment of such claims, and it would not be presumed the city had attempted to make contracts in excess of its revenues for the year;"

It is also to be borne in mind that this action is on *town orders*. Although orders are subject to any defense that existed to the original obligation for which they were issued, there is a general principle applicable thereto stated in Dillon Municipal Corporations, 5th Ed., Sec. 855, Page 1294 which is well substantiated by the authorities cited therefor. This statement is,

"*County and City orders* signed by the proper officers *are prima facie binding and legal.* These officers will be presumed to have done their duty. Such orders make *a prima facie* cause of action. Impeachment must come from the defendant."

Of the very numerous authorities cited in support of this general principle, *Rollins* v. *Board of Com'rs.*, 8 Cir. 90 Fed. 577, *Board of Commissioners* v. *Keene Five-Cents Sav. Bank*, 108 Fed. 505, *Coffin et al.* v. *Board of Com'rs.*, 114 Fed. 518 and the same case on appeal in *Board of Commissioners* v. *Irvine et als.*, 126 Fed. 689, apply this presumption in favor of validity of warrants where the defense asserted was violation of the limitation on indebtedness. In *Rollins* v. *Board of Com'rs.*, supra, the court said:

> "Under such circumstances the introduction of the warrants, properly executed, and proof, which was introduced, of the ownership thereof by the plaintiff corporation, made out a prima facie case in favor of the plaintiff, and thereby the burden was placed upon the defendant county to prove by competent evidence the facts necessary to sustain the defense pleaded, to wit, that when *the indebtedness represented by the warrants* sued on was created the county was incapacitated from incurring *the same* by reason of the limitation imposed by the state constitution upon the debt-creating power of the county." (Emphasis ours.)

We hold that the rule announced in *Adams* v. *Waterville*, supra, which requires a defendant town, that defends against an indebtedness on the ground that it violates the constitutional debt limit of said town, to prove such violation, applies to obligations incurred for current expenses. We further hold that to maintain this burden of proof with respect to an obligation for current expenses the defendant town must not only show that the incurring of that obligation would be mathematically in excess of the limit fixed by the constitution, but, in addition thereto, it must also establish the fact that at the time it was incurred it was not to be paid out of current revenues available therefor as we have heretofore defined these terms. The unavailability of current revenues out of which such current expense was to be paid is not to be presumed; nor can it be found from the lack of evidence as to what the revenues were, coupled with the fact that the obligation has not been paid.

The referee in this case based his decision upon the non-payment of the various orders and the absence of evidence of the availability of revenues from which they could have been paid when incurred. This not only disregards but reverses the rule respecting the burden of proof in such cases, and was erroneous.

The court erred in accepting the report of the referee. The case must go back and be disposed of in accordance with the rule laid down in *Clark* v. *Clark*, 111 Me. 416; 89 A. 454. The court below may, in its discretion, strike off the reference, it may recommit it to the referee who heard it before; or, with the consent of the parties, it may, after this reference is stricken off, refer it anew to another referee or referees.

*Exceptions sustained.*